AUTORIDAD DE LOS PUERTOS DE PUERTO RICO, demandante
y recurrente, *v.* MUNICIPIO DE SAN JUAN y HÉCTOR R.
RIVERA RODRÍGUEZ, demandados y recurridos.

*Número:* RE-87–388      *Resuelto:* 17 de marzo de 1989

498

*Elaine Maymí Naíz* y *Carmelo Guzmán Géigel,* abogados de la recurrente; *Ada Linda González de Garau,* abogada del Municipio de San Juan, recurrido; *Segismundo Quiñones Lores,* abogado de Héctor R. Rivera Rodríguez, recurrido; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Miriam Álvarez Archilla, Procuradora General Auxiliar,* abogados de la Oficina Central de Administración de Personal, interventora.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

¿Procede el pago global o la transferencia al Municipio de San Juan del balance de las licencias de vacaciones y de enfermedad acumuladas por el recurrido, Héctor R. Rivera Rodríguez, durante su empleo con la Autoridad de los Puertos de Puerto Rico?

I

El codemandado recurrido Héctor R. Rivera Rodríguez trabajó para la Autoridad de los Puertos de Puerto Rico durante once (11) años. Al momento de su renuncia, el viernes

15 de marzo de 1985, ocupaba el puesto de Jefe de la División de Conservación en dicha agencia. Efectivo el lunes 18 de marzo de 1985, el recurrido comenzó a trabajar en el Municipio de San Juan en la posición de Director de Servicios Administrativos. En dicho puesto se mantuvo haciendo las aportaciones monetarias correspondientes al Sistema de Retiro de los Empleados del Gobierno y sus Instrumentalidades (Sistema de Retiro).

Una vez que el recurrido renunció a su puesto en la Autoridad de los Puertos de Puerto Rico, la agencia manifestó su intención de transferirle al Municipio de San Juan el balance de las licencias por enfermedad y por vacaciones acumuladas por el señor Rivera Rodríguez.

El Municipio de San Juan, por su parte, se negó a aceptar y a acreditar dichos balances. Alegó que la Ley Núm. 12 de 5 de mayo de 1953, según enmendada, 3 L.P.R.A. secs. 696–698, no le aplicaba a los municipios y, por lo tanto, no aceptaría la transferencia propuesta por la Autoridad de los Puertos de Puerto Rico. Sostuvo que en virtud de lo dispuesto en la Ley Núm. 125 de 10 de junio de 1967 (3 L.P.R.A. secs. 703–703e), la Autoridad de los Puertos de Puerto Rico venía obligada a pagarle al señor Rivera Rodríguez una suma global por concepto de vacaciones y de licencia por enfermedad acumuladas. El empleado recurrido hizo similar reclamo.

Ante la negativa del Municipio de San Juan, la Autoridad de los Puertos de Puerto Rico instó una demanda en solicitud de sentencia declaratoria, en conformidad con la Regla 59 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

El Tribunal Superior dictó sentencia mediante la cual dispuso que no procedía la transferencia de licencias al Municipio de San Juan. Conforme al dictamen del foro de instancia, la Autoridad de los Puertos de Puerto Rico tenía que pagar los balances de licencia de vacaciones y de enfermedad acumuladas por el empleado durante su empleo en la agencia.

No conforme con la sentencia, la demandante recurre a este Foro.

## II

La recurrente plantea, en resumen, los señalamientos de error siguientes:

Erró el Honorable Tribunal Superior al concluir que la Ley número 12, de 5 de mayo de 1953, según enmendada, no obliga al Municipio de San Juan a aceptar y acreditar las licencia[s] acumuladas por el empleado recurrido en la Autoridad de los Puertos.

Erró el Honorable Tribunal Superior al concluir que la desvinculación total y absoluta que requiere la Ley número 125, supra, se refiere a la desvinculación del puesto que ocupaba el recurrido en la Autoridad de los Puertos y que ésta viene obligada a pagar al empleado la licencia acumulada tanto por vacaciones como por enfermedad. Informe del Procurador General, pág. 3.

El 11 de septiembre de 1987 instruimos al Procurador General y a la Oficina Central de la Administración de Personal que comparecieran y expusieran su posición en cuanto a los puntos en controversia. Las partes han comparecido. Estamos en posición de resolver.

## III

Para ubicar en adecuada perspectiva la controversia ante nos, examinamos brevemente el esquema general del sistema de personal que se estableció en Puerto Rico en 1975 y la conceptualización que permea el mismo.

■ La Asamblea Legislativa, al aprobar la actual Ley de Personal del Servicio Público de Puerto Rico (Ley de Personal), Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 *et seq.*), estableció la política pública que reafirmaba el principio de mérito, haciéndolo extensivo a todos los sectores del empleo público. *Torres Ponce v. Jiménez*, 113 D.P.R. 58

(1982); *Delgado Rivera v. Alcalde de Carolina*, 109 D.P.R. 5 (1979). Como parte de dicha política pública, estableció un sistema de personal que integró conceptos actualizados de administración de personal al ámbito de las agencias comprendidas en el servicio público. 1975 Leyes de Puerto Rico, Parte II, pág. 800. A su vez, creó un solo sistema de personal que se denominó como "Sistema de Personal del Servicio Público". *Torres Ponce v. Jiménez*, supra, pág. 69.

■ La propia Ley Núm. 5, *supra*, sin embargo, estableció que sus disposiciones no aplicarían a una serie de agencias y ramas de gobierno, a las cuales calificó como "agencias excluidas". Estas agencias comprenden: (1) la Rama Legislativa; (2) la Rama Judicial; (3) los empleados de agencias o instrumentalidades del Gobierno que funcionan como negocios privados; (4) los empleados de agencias o instrumentalidades del Gobierno que tengan derecho a negociar colectivamente mediante leyes especiales, y (5) la Universidad de Puerto Rico. 3 L.P.R.A. sec. 1338.

No obstante haberse excluido a estas agencias y ramas de gobierno del alcance de la Ley Núm. 5, *supra*, se especificó que estos grupos tendrían que adoptar, con el asesoramiento de la Oficina Central de Administración de Personal, un reglamento de personal en el que se incorporaría el principio de mérito. *Torres Ponce v. Jiménez*, supra.

■ El legislador fundamentó la exclusión de las Ramas Legislativa y Judicial del ámbito de ley, en su interés de salvaguardar el principio de la separación de poderes, presente en nuestro ordenamiento constitucional. Por otra parte, la exclusión de las agencias públicas que operan como negocios privados con derecho a negociar colectivamente obedeció al interés de evitar cualquier conflicto que pudiera surgir entre las disposiciones de la ley y los convenios colectivos existentes en dichas agencias. *Reyes Coreano v. Director Ejecu-*

*tivo*, 110 D.P.R. 40 (1980). Por esa razón se modificó el propósito original esbozado en el anteproyecto que dio fundamento a los proyectos P. de la C. 1633 y P. del S. 1428. Estos proyectos originales creaban un sistema de personal dentro del cual quedaban comprendidas todas las agencias del Gobierno sin exclusión de clase alguna. Ello se lograba mediante la creación de unas estructuras compuestas por la Administración Central y los Administradores Individuales.

■ La Ley Núm. 5, *supra*, sin embargo, dividió el Sistema de Administración de Personal en una Administración Central y en los Administradores Individuales, y excluyó de su aplicación a las agencias especificadas en la Sec. 10.6 de la ley (agencias excluidas), 3 L.P.R.A. sec. 1338(3) y (4). *Reyes Coreano v. Director Ejecutivo*, supra, págs. 45–47.

■ La Ley Núm. 5, *supra*, además, integró al sistema de personal del Gobierno de Puerto Rico a los municipios, los constituyó en administradores individuales y les reconoció autonomía gerencial.(1) *Díaz Marín v. Mun. de San Juan*, 117 D.P.R. 334 (1986).

La controversia que hoy resolvemos tiene tangencia con el ordenamiento legal y administrativo establecido mediante el Sistema de Administración de Personal de Puerto Rico, aunque se centra en la interpretación de una ley especial que afecta a los empleados públicos. La interpretación que hoy damos a la Ley Núm. 12, *supra*, no menoscaba el interés que el legislador deseaba proteger al señalar que determinadas agencias estaban excluidas de la Ley de Personal.

---

(1) Los municipios son criaturas jurídicas de la Asamblea Legislativa y, como tales, corresponde a ésta determinar lo relativo a su organización y funcionamiento. *Colón v. Municipio de Guayama*, 114 D.P.R. 193 (1983). Los municipios son entidades con plenas facultades legales y administrativas en todo asunto que fuere de naturaleza municipal y cuentan con personalidad legal separada del Gobierno de Puerto Rico. 21 L.P.R.A. sec. 2051.

## IV

■ La Ley Núm. 12, *supra*,(2) según enmendada, regula la transferencia de licencias de vacaciones regulares y por enfermedad que hayan acumulado los empleados públicos al pasar éstos de un puesto a otro en los servicios exentos, por oposición y sin oposición, del Gobierno de Puerto Rico. La ley intenta fomentar la movilidad de los empleados públicos entre las distintas agencias del Gobierno con independencia del servicio en que estos empleados se encuentren comprendidos. Su aplicabilidad, por ende, se extiende a las distintas transacciones de personal comprendidas dentro de los distintos servicios que componen el Gobierno de Puerto Rico, salvo cuando media la desvinculación total y definitiva del empleado del servicio público. Informe de la Cámara de Representantes sobre el P. del S. Núm. 91, 31 de marzo de 1953.

El informe antes citado expresa que en innumerables ocasiones la falta de este intercambio y ausencia de movilidad ha desalentado a los empleados públicos a pasar de un tipo de servicio a otro. Específicamente señala que ello no ayuda a fomentar el servicio de carrera público, puesto que, por el temor a perder las vacaciones o la licencia por enfer-

---

(2) "Se autoriza la transferencia de licencia por vacaciones y por enfermedad, acumulada por un funcionario o empleado del Estado Libre Asociado de Puerto Rico al *pasar* de un puesto a otro en los Servicios Exento, por Oposición, o sin Oposición, del Gobierno de Puerto Rico.

"Cuando un funcionario o empleado del Gobierno del Estado Libre Asociado de Puerto Rico pase de una agencia a otra comprendida dentro de los Servicios Exento, por Oposición, o sin Oposición, la agencia en que él trabaja certificará, y la agencia que adquiera sus servicios *aceptará y acreditará*, el número de días, por vacaciones y por enfermedad acumulados por dicho funcionario o empleado, según el sistema de licencia en vigor en cada Servicio.

" El *máximo* de licencia *transferible* será de 60 días en el caso de licencia por vacaciones y de 90 días en el caso de licencia por enfermedad." (Énfasis suplido.) 3 L.P.R.A. secs. 696, 697 y 698.

medad que tuvieren acumuladas, los empleados prefieren seguir en la misma agencia donde están laborando con perjuicio en innumerables ocasiones al propio desarrollo y mejoramiento del servicio público. Del informe se desprende, además, que el legislador consideró que la medida se hacía necesaria tanto para el fomento del servicio de carrera público como para evitar la discriminación contra empleados que pasaban de un servicio a otro dentro del Gobierno.

Hay que señalar que en el momento en que se adoptó la referida Ley Núm. 12, *supra*, la discriminación se evidenciaba con la pérdida de la licencia por vacaciones y por enfermedad que sufrían aquellos empleados públicos que pasaban de un servicio a otro. Ello operaba como un obstáculo a la superación del empleado y al principio de movilidad. Este principio de movilidad también ha sido protegido por la actual Ley de Personal. Así, durante las discusiones que precedieron a la aprobación de la medida, se señaló que con su adopción se abrían nuevos cauces y oportunidades para que el personal del Gobierno pudiera moverse entre unas agencias y otras buscando superarse. Borrador del Diario de Sesiones; Procedimientos y Debates de la Asamblea Legislativa; Senado, 3 de octubre de 1975, pág. 140.

No cabe duda de que al adoptarse la Ley Núm. 12, *supra*, el legislador tenía como propósito fundamental el crear un instrumento efectivo que garantizara la permanencia del empleado dentro del servicio público, a la vez que fomentaba su movilidad y su capacidad de superación. Se intentaba con su aprobación autorizar la transferencia de licencias por vacaciones y por enfermedad acumuladas por los empleados públicos, cuando éstos pasaban de un puesto a otro dentro del servicio público, independientemente de que en la transacción de personal pertinente estuviesen implicadas agencias comprendidas en el servicio exento, por o sin oposición. Si algo queda meridianamente claro del historial

legislativo de esta pieza legislativa es que ésta nunca se concibió como un mecanismo para que el empleado recibiera el pago de vacaciones y de licencias acumuladas cuando pasaba de un servicio a otro.

Al analizar el alcance de la Ley Núm. 12, *supra*, no podemos perder de vista que esta medida hace referencia a las subdivisiones del sistema de personal prevalecientes bajo la antigua Ley de Personal, Ley Núm. 345 de 12 de mayo de 1947. Con la derogación de dicha ley, esas subdivisiones perdieron su razón de ser y han quedado suplantadas por las nuevas subdivisiones establecidas en la Ley Núm. 5, *supra*, esto es, agencias comprendidas en la administración central, administradores individuales y agencias excluidas.[3] 3 L.P.R.A. secs. 1342, 1343 y 1338, respectivamente. Así, dentro de la nueva clasificación de "agencias de la Administración Central" quedaron ubicadas aquellas que estaban clasificadas mayormente bajo el "servicio por oposición" en la antigua ley. *Delgado Rivera v. Alcalde de Carolina*, supra; J.R. Feijoó, *La Administración de Personal,* San Juan, O.C.A.P., 1979, págs. 15–16. Las agencias cuyo personal estaba incluido en el servicio exento y en el servicio sin oposición fueron incluidas bajo el concepto de "Administradores Individuales". De igual manera, se incluyeron bajo la clasificación de agencias excluidas a la mayoría de las agencias que se encontraban comprendidas dentro del denominado "servicio exento". *Delgado Rivera v. Alcalde de Carolina*, supra; Feijoó, *op. cit.*, págs. 16–17.

Al ser incluidos los municipios como administradores individuales dentro del marco de la Ley Núm. 5, *supra*, y la

---

[3] Es norma de hermenéutica legal que ante dos (2) disposiciones legales antagónicas prevalece la última voluntad del legislador expuesta en la nueva ley cuando ambas sean irreconciliables y no puedan subsistir conjuntamente. *Pérez Vega v. Tribunal Superior*, 93 D.P.R. 749 (1966); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 66, pág. 420.

Autoridad de los Puertos como agencia excluida, ambas quedaron cubiertas por las disposiciones de la Ley Núm. 12, *supra*. La ley, en ese sentido, le impone a la agencia que recibe al empleado la obligación de acreditar y de aceptar las licencias acumuladas, siempre que el empleado pase de un puesto a otro o de una agencia a otra dentro del servicio público.

Esta interpretación está acorde con el propósito legislativo de la Ley Núm. 12, *supra*, y con el esquema y los objetivos de la nueva Ley de Personal. *Rojas v. Méndez & Co., Inc.*, 115 D.P.R. 50 (1984).

El municipio recurrido argumenta que como la nueva Ley de Personal dispone únicamente traslados de empleados públicos entre las agencias comprendidas en la Administración Central, entre los administradores individuales, entre estos últimos y las agencias de la Administración Central, y viceversa, resultaba improcedente el traslado del empleado recurrido de la Autoridad de los Puertos de Puerto Rico hacia el Municipio de San Juan. Sostiene que como el empleado de la Autoridad de los Puertos no podía trasladarse hacia el Municipio de San Juan, el único mecanismo procesal que tenía a su disposición era el de la renuncia, y que con esa acción para todos los efectos quedaba desvinculado totalmente del servicio público. Al quedar desvinculado por motivo de la renuncia de su antiguo puesto, lo procedente según el municipio era que la Autoridad de los Puertos de Puerto Rico le pagara el monto de las vacaciones y de licencia por enfermedad acumuladas conforme a lo dispuesto por la Ley Núm. 125, supra.[4]

---

[4] La Ley Núm. 125 de 10 de junio de 1967 (3 L.P.R.A. secs. 703–703e), provee un mecanismo para el pago de una suma global de las licencias acumuladas de vacaciones regulares y por enfermedad, a los empleados cubiertos, cuando éstos se separan definitivamente del servicio público o cuando se acogen a la jubilación.

Como requisito para que el empleado sea acreedor del pago global la ley exige su *separación definitiva* del servicio público, entendiéndose que desde el

No le asiste la razón al municipio. El concepto de traslado dentro del marco técnico de los términos comprendidos en la Ley de Personal se utiliza exclusivamente para designar aquellos cambios de personal de un puesto a otro, cuyas funciones son de similar naturaleza o que conllevan un mismo tipo de retribución. El concepto, por lo tanto, se circunscribe a unas acciones de personal limitadas, las cuales no cubren a aquellos empleados que ocupan puestos en las agencias excluidas. 3 L.P.R.A. sec. 1334.

Ahora bien, el que no proceda el traslado de un empleado de una agencia excluida a un administrador individual no es óbice para que el empleado *pase* de una agencia a otra conforme al contexto y propósito de la Ley Núm. 12, *supra.* La Ley Núm. 12, *supra,* no incluye el concepto *traslados,* sino que utiliza el término *pasar* de un puesto a otro o de una agencia a otra sin distinguir en la clasificación de las mismas. Este término *pasar* de un puesto a otro o de una agencia a otra es de carácter amplio y abarca a todo el sistema de personal del servicio público. Al no proceder el traslado del empleado recurrido hacia el Municipio de San Juan —por estar involucrada en la transacción de personal una agencia excluida— dicho empleado no tenía otra alternativa que renunciar a la posición que ocupaba en la Autoridad de los Puertos de Puerto Rico para de esa forma poder pasar, mediante nombramiento, a su nuevo puesto en el municipio. Ese era el único mecanismo procesal disponible en su caso para poder pasar a ocupar otra posición dentro del sistema de servicio público. El que mediara la renuncia no implica que éste se hubiera desvinculado totalmente del sistema.

---

momento en que recibe dicho pago el empleado queda desligado completa y definitivamente del servicio público. Informe de la Comisión de Gobierno sobre el P. de la C. 567 (20 Diario de Sesiones de la Asamblea Legislativa (Cámara), Parte 3, pág. 967 (1966)).

La contención del municipio, en el sentido de que el empleado se desvinculó del servicio al renunciar a su posición en la Autoridad de los Puertos de Puerto Rico, no encuentra apoyo frente a la realidad de que el empleado renunció a su puesto el viernes 15 de marzo de 1985 y comenzó a trabajar el siguiente día laborable (lunes 18) en su nueva posición en el Municipio de San Juan. Al momento de efectuar su renuncia, dicho empleado no sólo no solicitó el reembolso de las aportaciones hechas al Sistema de Retiro, sino que continuó aportando las cantidades correspondientes por ese concepto en su nuevo empleo. Ante esos hechos es claro que no se desvinculó del servicio público.[5]

■ A la luz del texto de la Ley Núm. 12, *supra*, concluimos que una vez que el empleado público pasa de una agencia a otra, sea la agencia una comprendida en la Administración Central, un ."administrador individual" o una "agencia excluida", la agencia que adquiere los servicios de dicho empleado tiene que aceptar los balances de licencia por vacaciones y por enfermedad acumulados en el empleo anterior. La acreditación del número correspondiente de días por vacaciones y por enfermedad se hará conforme al sistema de licencia prevaleciente en cada servicio. Los Arts. 2 y 3 de la Ley Núm. 12, *supra*, disponen en ese sentido que:

> Cuando un funcionario o empleado del Gobierno del Estado Libre Asociado de Puerto Rico pase de una agencia a otra comprendida dentro de los Servicios Exento, por Oposición, o sin Oposición, la agencia en que él trabaja certificará, y la agencia que adquiera sus servicios aceptará y acreditará, el número de días, por vacaciones y por enfermedad acumulados por dicho funcionario o empleado, según el sistema de licencia en vigor en cada Servicio.

---

[5] Estas circunstancias particulares del caso ante nos hacen innecesario que nos expresemos sobre la Ley Núm. 125, *supra*, y las condiciones que tienen que darse para que la misma sea de aplicación y se considere que ha ocurrido una separación definitiva del servicio público.

. . . . . . . .

El máximo de licencia transferible será de 60 días en el caso de licencia por vacaciones y de 90 días en el caso de licencia por enfermedad. 3 L.P.R.A. secs. 697 y 698.

■ Puesto que la Ley Núm. 12, *supra*, dispone la cantidad máxima de licencia transferible, nada impide que en aquellos casos en que un empleado pasa a ocupar otra posición en otra agencia o rama de gobierno comprendida en el servicio público, y que ha acumulado más de sesenta (60) días en el caso de licencia por vacaciones y/o de noventa (90) días de licencia por enfermedad, le pueda pagar la agencia o rama de gobierno en que el empleado cesa de laborar el exceso en efectivo cuando así lo disponga la reglamentación correspondiente de dicha agencia o rama de gobierno.

■ Los organismos administrativos que hasta el presente han interpretado y han puesto en vigor esta legislación lo han hecho siguiendo la letra de la ley y su propósito legislativo. Esta interpretación ejecutiva, aun cuando no nos obliga, sí tiene un valor persuasivo, particularmente cuando la misma se ha sostenido por un período de tiempo considerable.[6] *Brugal & Co. v. Buscaglia, Tes.*, 64 D.P.R. 903 (1945); *Ready Mix Concrete v. Comisión Industrial*, 92 D.P.R. 37 (1965); *Tormos & D.A.C.O. v. F.R. Technology*, 116

---

[6] Tanto el Departamento de Justicia como la Oficina Central de Administración de Personal han interpretado la Ley Núm. 12 de 5 de mayo de 1953, según enmendada, 3 L.P.R.A. secs. 696–698, al efecto de que la misma es aplicable a todos los organismos gubernamentales del Estado Libre Asociado de Puerto Rico, ya sean agencias comprendidas en la Administración Central, Administradores Individuales o Agencias Excluidas, y que cuando un empleado pasa de un puesto a otro en dichos organismos gubernamentales la transferencia de las licencias acumuladas, tanto por enfermedad como por vacaciones, se hace mandatoria y no procede el pago de la suma global por tal concepto provisto por la Ley Núm. 125, *supra*. Véanse: Opiniones del Secretario de Justicia de 22 de junio de 1987, de 2 de octubre de 1986, de 11 de junio de 1985 (LVI (Núm. 1985–15) Op. Sec. Just. 103–106 (1985)), y de 18 de noviembre de 1985 (LVI (Núm. 1985–34) Op. Sec. Just. 200–203 (1985)), entre otras.

D.P.R. 153 (1985); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 60, pág. 379.

La norma que hoy adoptamos promueve los objetivos de fomentar la carrera en el servicio público y la movilidad como pilares fundamentales para una sana administración pública. 3 L.P.R.A. secs. 1312 y 1311. Esta norma beneficia tanto al empleado como al servicio público. Los empleados, al tenerse que enfrentar a una situación de enfermedad o de emergencia prolongada, pueden contar con los términos y los beneficios de las licencias acumuladas para atender dicho evento, sin que con ello se disloque el sistema de servicio público.

Por los fundamentos antes expuestos, *se dictará sentencia mediante la cual se revoca la del foro de instancia.*

El Juez Asociado Señor Negrón García concurre con el resultado sin opinión escrita.