RAÚL CABALLERO MELÉNDEZ, demandante y recurrido, *v.* SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DE PUERTO RICO ET AL., demandados y recurrentes.

*Número:* RE-87-56 *Resuelto:* 28 de junio de 1991

150

152

*Rafael Ortiz Carrión, Procurador General, Jorge E. Pérez Díaz, Procurador General, Norma Cotti Cruz, Subprocuradora General, Miriam Álvarez Archilla* y *Laura G. Ydrach Vivoni, Procuradoras Generales Auxiliares,* abogados del recurrente; *Julio Williams Andino,* abogado del recurrido; *Raúl Caballero Meléndez, pro se.*

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

En el presente recurso interpretamos el alcance de las disposiciones legales sobre la liquidación global de licencias acumuladas en el empleo público a tenor con lo dispuesto en la Ley Núm. 125 de 10 de junio de 1967, según enmendada, 3 L.P.R.A. sec. 703 *et seq.* A la luz de la interpretación que aquí adoptamos, confirmamos la sentencia

del foro de instancia que le reconoció el derecho a la liquidación inmediata de tales beneficios al empleado recurrido.

La controversia en este caso se ciñe a determinar si tiene derecho el recurrido a exigir y a que se le satisfaga el pago global de la licencia por enfermedad acumulada en su puesto *al momento de su separación* del servicio público para acogerse a una pensión diferida según dispuesta en la ley de retiro del personal del gobierno (Ley de Retiro), Ley Núm. 447 de 15 de mayo de 1951, según enmendada, 3 L.P.R.A. secs. 761 a 788. Contestamos en la afirmativa. Veamos los hechos.

## I

El Lic. Raúl Caballero Meléndez (el recurrido) comenzó a prestar servicios al Gobierno como empleado regular el 21 de enero de 1974. El 16 de enero de 1986 el recurrido presentó su carta de renuncia al puesto que ocupaba de Abogado III dentro del servicio de carrera en el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades (Sistema de Retiro). Para esa fecha tenía treinta y cuatro (34) años de edad y doce (12) años de servicios en el Gobierno cotizados y acreditados al Sistema de Retiro. En su carta de renuncia al puesto el recurrido le indicó al Sistema de Retiro su propósito de acogerse a los beneficios de la pensión diferida provista en la Ley Núm. 447, *supra*, 3 L.P.R.A. sec. 766(A). Solicitó, además, el pago de la licencia de vacaciones acumuladas y no utilizadas hasta el máximo de sesenta (60) días laborables y el pago de la licencia por enfermedad acumulada y no utilizada hasta el máximo de noventa (90) días laborables, a tenor con lo dispuesto en la Ley Núm. 125, *supra*, 3 L.P.R.A. sec. 703a. El Sistema de Retiro le negó el pago de la licencia por enfermedad aduciendo que "mediante el Memorando General 16–85 de 9 de diciembre de 1985 el Director de la Oficina Central de Administración de Personal, éste quedaba

en *suspenso* hasta que la persona se acogiera a la jubilación al cumplir la edad mínima requerida por ley".([1])

El 20 de febrero de 1986 el recurrido instó una demanda sobre sentencia declaratoria contra el Sistema de Retiro, la Oficina Central de Administración de Personal (O.C.A.P.) y el Estado Libre Asociado (E.L.A.) en la que alegaba que el Memorando General 16–85, *supra*, le privaba de su propiedad sin el debido proceso de ley; que establecía un discrimen irracional y que le violaba su derecho a la igual protección ante las leyes garantizado por las constituciones del E.L.A. y de Estados Unidos de América.

Luego de los trámites procesales de rigor, el foro de instancia dictó sentencia a favor del recurrido el 11 de diciembre de 1986. Tras hacer una interpretación estatutaria de las leyes en controversia y obviar los planteamientos constitucionales levantados por el recurrido, le ordenó al Sistema de Retiro que inmediatamente pagara la licencia por enfermedad acumulada por aquél hasta un máximo de noventa (90) días. Decretó, además, que el Memorando General 16–85 de O.C.A.P. y la opinión del Secretario de Justicia en el que se fundamentó dicho memorando (Op. Sec. Just. de 5 de agosto de 1985) eran nulos e ineficaces por ser contrarios a derecho.

De esa sentencia acude el E.L.A. ante nos aduciendo que:

> Erró el Honorable Tribunal de Instancia al determinar que al demandante y recurrido Raúl Caballero Meléndez le asistió un derecho al pago global de la licencia por enfermedad *al momento de su separación del servicio público*, al amparo de las disposiciones de la Ley Núm. 125 de 10 de junio de 1967, según enmendada, 3 L.P.R.A. sec. 703(a). (Énfasis suplido.) Solicitud de Revisión, pág. 3.

---

[1] Ese memorando de la Oficina Central de Administración de Personal (O.C.A.P.) estaba fundamentado en la interpretación dada por el Secretario de Justicia a la Ley Núm. 125 de 10 de junio de 1967 (3 L.P.R.A. sec. 703 *et seq.*) mediante su Opinión de 5 de agosto de 1985.

A causa del interés público comprendido en el recurso decidimos revisar. Las partes han comparecido, por lo que estamos en condiciones de resolver.

## II

La Ley Núm. 125, *supra*, regula lo concerniente a la liquidación de las licencias acumuladas y no utilizadas, ya sea de vacaciones o por enfermedad, por los *funcionarios y empleados públicos*(²) cuando éstos se desvinculan del servicio público por cualquier causa. Su Art. 2 dispone específicamente:

*Pago global a la separación del servicio*

Todo funcionario o empleado del Estado Libre Asociado de Puerto Rico, excepto los funcionarios de la Rama Ejecutiva nombrados por el Gobernador y los de instrumentalidades y corporaciones públicas, *tendrá derecho a que se le pague y se le pagará* una suma global de dinero por la licencia de vacaciones que tuviere acumulada hasta un máximo de sesenta (60) días laborables a su separación del servicio por cualquier causa, *y por la licencia por enfermedad que tuviere acumulada, hasta un máximo de noventa (90) días laborables a su separación del servicio para acogerse a la jubilación si es participante de algún sistema de retiro auspiciado por el Gobierno, y si no lo fuere,* a su separación definitiva del servicio si ha prestado, por lo *menos,* diez (10) años de servicios. Esta suma global por concepto de ambas licencias se pagará a razón del sueldo que el funcionario o empleado estuviere devengando al momento de su separación del servicio e independientemente de los días que hubiere disfrutado de estas licencias durante el año. Las disposiciones de esta sección son aplicables a los fiscales, procuradores y registradores de la propiedad.

Se faculta a los funcionarios nominadores para autorizar tal pago.

Al cesar la prestación de servicios, el puesto que venía desempeñando el funcionario o empleado se considerará vacante y

(²) En adelante el uso del término "empleado" en esta opinión incluye el término "funcionario" público a los fines de la cubierta que les brinda la Ley Núm. 125, *supra*.

no se considerará como tiempo servido el período posterior a la fecha en que cesó la prestación de servicios, equivalente en tiempo de licencia a dicho pago final.

Si la separación del servicio fuere motivada por la muerte del funcionario o empleado, se les pagará a sus beneficiarios la suma que hubiere correspondido a éste, por razón de la licencia de vacaciones no utilizada, conforme se dispone en esta sección. (Énfasis suplido.) 3 L.P.R.A. sec. 703a.

■ Dicha Ley Núm. 125 regula lo concerniente al contenido y amplitud de estas licencias y su pago final para los funcionarios nombrados por el Gobernador y por los presidentes de las Cámaras Legislativas. 3 L.P.R.A. sec. 703b. En la Rama Judicial, estos beneficios están regulados en la Sec. 19.9 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, 4 L.P.R.A. Ap. XIII. Las corporaciones públicas establecen, mediante reglamentación al efecto, el contenido y pago final de estos beneficios marginales para sus empleados o funcionarios no unionados. Los convenios colectivos regulan, para el personal unionado de las corporaciones públicas, el contenido y alcance de estas licencias y su liquidación. La Ley Orgánica de los Municipios de Puerto Rico regula el ámbito de la liquidación de estas licencias para los empleados y funcionarios municipales. 21 L.P.R.A. sec. 3357.

■ Ahora bien, la evolución e historial legislativo de este artículo de la ley y sus enmiendas demuestran su carácter reparador y su propósito de proteger los derechos adquiridos por los servidores públicos, así como de estimular a aquel servidor público que por servirle a su país se ha visto imposibilitado del disfrute de sus vacaciones regulares y de su licencia por enfermedad acumulada. Por ello debemos interpretarlo liberalmente, a favor del empleado, puesto que dicha ley concede una serie de derechos en pro del reclutamiento y retención de tales servidores públicos con el fin del fortalecimiento mismo del servicio público.

■ Originalmente, el Art. 2 de la Ley Núm. 125, *supra,*

3 L.P.R.A. sec. 703a, sólo autorizaba la concesión de un pago global por concepto de licencia por vacaciones acumuladas cuando el funcionario o empleado cubierto por este régimen se separaba del servicio, excepto por razones de destitución o abandono. Mediante la aprobación de la Ley Núm. 37 de 25 de mayo de 1972, la Asamblea Legislativa adicionó a dicho artículo la concesión del pago global por concepto de licencia por enfermedad acumulada. Véase 1972 Leyes de Puerto Rico 81-82. El informe que rindiera la Comisión de Gobierno de la Cámara de Representantes, de 4 de marzo de 1972, en torno al P. de la C. 1584, págs. 3–4, que luego se convirtió en la Ley Núm. 37, *supra*, disponía:

> *Se propone enmendar, además, el Artículo 2 para autorizar un pago global, hasta un máximo de noventa días, por la licencia por enfermedad que el funcionario o empleado tuviere acumulada al momento de su separación del servicio para acogerse a la jubilación. Es decir, que sólo se concedería el pago global por licencia por enfermedad en los casos en que éste deja el servicio público para disfrutar de una pensión por retiro*, por edad, o por incapacidad.
>
> Asímismo, el Sr. Romero nos informó que en la actualidad existe un problema de mal uso de la licencia por enfermedad, pues la mayoría de los empleados y funcionarios no comprenden que la licencia por enfermedad es una protección, es decir, un seguro para cubrir una eventualidad ocasionada por quebrantos en la salud. Debido a que dicha licencia es acumulada hasta un máximo de noventa días, una vez el empleado tiene bastante licencia acumulada la tendencia es utilizarla, aunque no sea por razones válidas de enfermedad, para no perderla. Esta situación es más grave en los casos de los empleados que por una u otra razón están próximos a separarse definitivamente del servicio público. *Estas personas tienden a utilizar, antes de la efectividad de su separación, toda su licencia por enfermedad acumulada para no perderla, lo que en muchas ocasiones afecta al mejor funcionamiento de las agencias.*
>
> *El propósito de esta propuesta es proveer un incentivo para inducir a los empleados públicos a un mejor uso de la licencia por enfermedad para evitar la práctica señalada y, por otra parte, añadiría un beneficio marginal adicional lo cual es un*

*incentivo para atraer y retener personal idóneo al servicio de carrera pública.* (Énfasis suplido.)

Al ser sometido a votación en dicho cuerpo, el representante Agrait Rivera Cintrón sintetizó así el propósito de la medida:

> Sr. Rivera Cintrón: El Proyecto de la Cámara 1584 tiene que ver con los empleados regulares de gobierno. Y precisamente es para ampliar también los beneficios de los empleados regulares de gobierno.
>
> Como ha venido sucediendo, es que actualmente la ley le impide en (sic) que las (sic) personas que van a retirarse se le pueda pagar cierto tiempo que tienen acumulado de vacaciones por enfermedad y vacaciones.
>
> *Esta ley permite que los empleados cuando se van a retirar o a jubilar, se le pueda pagar hasta noventa días de vacaciones por enfermedad, si los tuviesen acumulados a base de su sueldo, más sesenta (60) días de vacaciones.* Quiere decir que se le pueden pagar hasta ciento cincuenta (150) días que tengan acumulados entre vacaciones por enfermedad, y vacaciones, a estos empleados mediante la aprobación de este proyecto. Por lo tanto, señor Presidente, vamos a solicitar que se apruebe el Proyecto de la Cámara 1584, según la recomendación del informe de la Comisión de Gobierno. (Énfasis suplido.) 26 Diario de Sesiones de la Asamblea Legislativa (Cámara) 602 (1972).

■ Además, la citada Ley Núm. 37 eliminó las causales de destitución y abandono del servicio como impedimentos para recibir el pago global de la licencia de vacaciones no utilizada por el empleado.

Esta breve incursión por el historial legislativo de la Ley Núm. 125, *supra*, nos permite afrontar, con una perspectiva amplia, el sentido del texto del estatuto y nos aclara la verdadera intención legislativa del mismo. Véase R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, San Juan, Pubs. J.T.S., 1987, págs. 245–274.

■ De los informes antes citados se desprende que el pago global de la licencia por enfermedad acumulada y no

160

utilizada por el empleado al momento de su separación del servicio fue concebido por el legislador con dos (2) propósitos: (1) fomentar el buen uso de la licencia por enfermedad, y (2) evitar la exclusión de los participantes del sistema de retiro que se acogen a la jubilación bajo la Ley de Retiro, 3 L.P.R.A. sec. 766, del beneficio concedido por dicha ley, de manera que sirviese de beneficio marginal adicional para atraer y retener personal idóneo al servicio público de carrera.

El propósito de fomentar el buen uso de esta licencia se logra reconociéndole, como derecho al funcionario o empleado, que se le pagará la licencia acumulada al momento de su separación de manera que, consciente de que se le pagará y no la perderá, la utilizará con mayor circunspección. El propósito de incluir a los participantes del Sistema de Retiro se cumple igualando su derecho con el de aquel empleado no participante en dicho sistema.

Esos propósitos quedan plasmados de manera patente en el lenguaje claro del estatuto. De este lenguaje surge diáfanamente que el pago de la licencia por enfermedad acumulada procede cuando un empleado gubernamental se separa o es separado del servicio y se encuentra en una de dos (2) situaciones distintas:

1. En la primera, *para acogerse a la jubilación* en caso de ser un participante de algún sistema de retiro auspiciado por el Gobierno.([3])
2. En la segunda, a su separación definitiva del servicio, si el

---

([3]) El Art. 4 de la Ley Núm. 447 de 15 de mayo de 1951 (3 L.P.R.A. sec. 764) define quiénes son participantes del sistema de retiro del Gobierno estatal. El Sistema de Retiro de la Universidad de Puerto Rico, 18 L.P.R.A. sec. 637; el Sistema de Retiro para Maestros, 18 L.P.R.A. secs. 321 a 366; el Sistema de Retiro de la Autoridad de Energía Eléctrica, 22 L.P.R.A. secs. 218 a 220, y el Sistema de Retiro para la Judicatura de Puerto Rico, 4 L.P.R.A. secs. 233 a 246, son sistemas de retiro auspiciados por el Gobierno. Cada uno de ellos establece los requisitos para ser participante. La Ley Núm. 125, *supra*, cubre también a los participantes de estos sistemas de retiro que no estén expresamente excluidos de su aplicación. 3 L.P.R.A. sec. 703(a) y (b).

empleado no es un participante del Sistema de Retiro, siempre que haya prestado por lo menos diez (10) años de servicios al Gobierno.

Valga aclarar que en ambas situaciones "[c]omo requisito para que el empleado sea acreedor del (sic) pago global se exige por la ley su *separación definitiva* del servicio público, entendiéndose que desde el momento en que recibe dicho pago, el empleado queda desligado completa y definitivamente del servicio público". (Énfasis en el original.) *Aut. de Puertos v. Mun. de San Juan*, 123 D.P.R. 496, 507–508 esc. 4 (1989). De suerte que no es suficiente una renuncia que se utilice como mero mecanismo procesal para *pasar* de un puesto a otro. Íd., pág. 506.

En el caso de autos estamos ante la primera situación. La pregunta obligada es si un empleado que renuncia a su puesto para acogerse a una pensión diferida bajo la Ley de Retiro, 3 L.P.R.A. sec. 766(A), cae dentro del concepto de "para acogerse a la jubilación" dispuesto en la Ley Núm. 125, *supra*, 3 L.P.R.A. sec. 703a, que le da derecho a recibir el pago de la licencia por enfermedad acumulada durante sus años de servicio. Resolvemos que sí. Veamos.

## III

Desde 1951, la Ley de Retiro, 3 L.P.R.A. secs. 761–788, dispone una pensión diferida para aquellos empleados participantes del Sistema de Retiro que al momento de separarse del servicio no hubieran cumplido los cincuenta y ocho (58) años de edad y hubieran prestado por lo menos diez (10) años de servicio.

La pensión o anualidad diferida se define en la Ley de Retiro del modo siguiente:

Los participantes cuya separación del servicio ocurriere an-

tes de cumplir la edad de cincuenta y ocho (58) años; y que hubieren terminado, por lo menos, diez (10), y menos de veinticinco (25) años de servicios acreditables; y *que no hubieren solicitado ni recibido el reembolso de sus aportaciones acumuladas;* tendrán derecho a recibir una anualidad *por retiro diferida.* Los mencionados participantes recibirán una *anualidad por retiro diferida, que comenzará al cumplir éstos la edad de cincuenta y ocho (58) años;* o, a opción suya, en cualquier fecha posterior, si hubieren completado diez (10) o más años y menos de veinticinco (25) años de servicio; o a partir de la fecha en que cumplan la edad de cincuenta (50) años en caso de policías y bomberos, y de cincuenta y cinco (55) años en caso de los demás participantes si hubieren completado en uno u otro caso, por lo menos veinticinco (25) años de servicio. (Énfasis suplido.) 3 L.P.R.A. sec. 766(A).

▪ Las aportaciones acumuladas a que se refiere la Ley de Retiro son todas las que un miembro o participante hace al Sistema de Retiro y los intereses devengados por éstas al tipo corriente que su Junta de Síndicos prescriba. 3 L.P.R.A. sec. 763. Éstas las cobrará el empleado cuando cumpla las edades especificadas. No están incluidas las cantidades acumuladas en concepto de licencia por enfermedad y vacaciones no liquidadas cuando el empleado se acoge a la jubilación. El término "jubilación" no se sujeta a condición de edad en el estatuto. 3 L.P.R.A. sec. 703a.

▪ Para contestarnos la anterior interrogante debemos tener presente que las leyes referentes a un mismo asunto deben ser interpretadas las unas respecto a las otras, ya que lo que es claro en un precepto puede explicar lo dudoso en otro. Art. 18 del Código Civil, 31 L.P.R.A. sec. 18; *Aponte v. Srio. de Hacienda, E.L.A.,* 125 D.P.R. 610 (1990). Mediante la Ley Núm. 198 de 23 de julio de 1974 se introdujo en la Ley Núm. 125, *supra,* el concepto amplio "para acogerse a la jubilación". Se eliminó así la limitación anterior de que el pago sólo procedía cuando el empleado renunciaba para acogerse al retiro por edad, 31 L.P.R.A. sec. 766, o por incapacidad ocupacional y no ocupacional, 3 L.P.R.A. secs. 769 y 770, respectivamente. Según el Memo-

rial Explicativo de 12 de noviembre de 1973 sobre el ante proyecto F-203, que luego se convertiría en la Ley Núm. 198, *supra, el propósito de esta enmienda era no excluir al empleado del beneficio de la liquidación global de licencias por la índole o el tipo de jubilación a que dicho empleado se acogiera al separarse del servicio.*([4])

La utilización del concepto amplio "para acogerse a la jubilación" en la Ley Núm. 125, *supra*, se mantuvo a pesar de que un informe del Departamento de Justicia de 1ro de abril de 1974 a la Cámara de Representantes sobre el P. del S. 719 (que luego se convirtió en la Ley Núm. 198 de 1974) recomendaba que "para evitar cualquier error de interpretación en la aplicación de la medida" debía quedar claro si los participantes del Sistema de Retiro que se acogieran a la pensión diferida tenían derecho al referido pago global por licencia por enfermedad acumulada a la fecha de su separación del servicio ó cuando cumplieran la edad estatutaria para el retiro. El legislador optó por dejar el concepto amplio, sin condicionarlo o limitarlo expresamente en el estatuto. 3 L.P.R.A. sec. 703a.

Ni la Ley Núm. 125, *supra*, 3 L.P.R.A. sec. 703a, ni las leyes *in pari materia* —Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1301 *et seq.*; Ley de Retiro, *supra*— definen el concepto "para acogerse a la jubilación". El término "jubilar" ha sido definido como la acción de "[d]isponer que, por razón de vejez, *largos servicios* o imposibilidad, y generalmente con derecho a pensión, cese un funcionario civil en el ejercicio de su carrera ... ". *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. II, pág. 800. Así que el término "jubilación" es amplio, dentro del cual quedan incluidas todo tipo de pensiones, *e.g.* edad, años de servicios e incapacidad.

---

([4]) Citado de la Opinión Núm. 29 del Secretario de Justicia de 31 de octubre de 1979.

■ La Ley de Retiro contiene varias modalidades de pensiones o anualidades por retiro. Estas incluyen las anualidades de retiro por edad, 3 L.P.R.A. sec. 766; por años de servicio, 3 L.P.R.A. sec. 766(A), dentro de la cual está incluida la pensión diferida luego de que el participante haya rendido diez (10) o más años de servicio; por incapacidad ocupacional, 3 L.P.R.A. sec. 769, por incapacidad no ocupacional, 3 L.P.R.A. sec. 770, y por mérito, 3 L.P.R.A. sec. 766(A).

■ Por lo tanto, resulta razonable concluir que el término "jubilación" se emplea en este contexto de la Ley Núm. 125, *supra*, como cese de funciones del empleado en el servicio público por razón de edad, largos años de servicio (diez (10) años), mérito o incapacidad con derecho a una pensión diferida o de otra índole. Resulta razonable concluir, además, que la Ley Núm. 198, *supra*, también tuvo el propósito de evitar la exclusión de los participantes del Sistema de Retiro que se acogen a la pensión diferida concedida por el Art. 2(A) de la Ley de Retiro, 3 L.P.R.A. sec. 766(A), del beneficio marginal de la liquidación global de licencias concedido por la Ley Núm. 125, *supra*.

Al legislador se le imputa el conocimiento de la ley. Así, el legislador que en 1974 aprobó la Ley Núm. 198 conocía que desde 1951 la Ley de Retiro establecía la pensión por años de servicio, 3 L.P.R.A. sec. 766 (A), que incluía la pensión diferida cuando al momento de su separación el empleado hubiera prestado diez (10) o más años de servicio y donde no era necesario cumplir la edad de retiro para acogerse a la pensión. Aún así, no consta ni en el historial ni en el texto expreso de la Ley Núm. 198, *supra*, su intención de excluir a los empleados participantes, que al momento de su separación se acogieran a la pensión diferida, de los beneficios de la citada Ley Núm. 125. Adviértase que por ser la Ley Núm. 125, *supra*, un estatuto de carácter reparador, los empleados excluidos de sus beneficios están expresamente mencionados en el estatuto, *e.g.*, los funciona-

rios de instrumentalidades y las corporaciones públicas o los nombrados por el Gobernador.

Una interpretación en contrario resultaría en la imposición de una restricción que el legislador rechazó y que contraviene los propósitos legislativos que inspiraran las enmiendas (Leyes Núms. 37 y 198) a la ley Núm. 125, *supra*, en perjuicio de un grupo de empleados expresamente cubiertos por los beneficios tanto de dicha ley como del servicio público. Así tendríamos como resultado la exclusión del derecho al pago global de licencia por enfermedad a los participantes del Sistema de Retiro quienes, como el recurrido, a su separación se acogen a la pensión diferida luego de haber prestado diez (10) o más años de servicio, mientras que los no participantes del Sistema de Retiro que hubieran prestado igual número de años de servicio serían acreedores a tal beneficio. Dicho resultado es insostenible. Además, esta interpretación sugerida por el Estado resultaría en desvirtuar uno de los propósitos principales de la enmienda que mediante la Ley Núm. 37, *supra*, se introdujo en la citada Ley Núm. 125: fomentar el buen uso de la licencia por enfermedad.

■ Sostenemos, pues, que un empleado participante que renuncia a su puesto para acogerse a una pensión diferida bajo la Ley de Retiro, 3 L.P.R.A. sec. 766(A), es acreedor al pago global de la licencia por enfermedad que, hasta un máximo de noventa (90) días laborables, tenga acumulada durante sus años de servicio por quedar incluido dentro del concepto amplio de "para acogerse a la jubilación" dispuesto en la Ley Núm. 125, *supra*, 3 L.P.R.A. sec. 703a. Réstanos determinar *el momento* en que debe hacerse efectivo dicho pago.

## IV

■ La Ley Núm. 125, *supra*, dispone que el empleado "tendrá derecho a que se *le pague, y se le pagará*" la suma

global por la licencia por enfermedad acumulada *"a su separación del servicio* para acogerse a la jubilación si es participante *de algún sistema de retiro ...".* 3 L.P.R.A. sec. 703a. La contención del Estado es que el pago de la liquidación global de la licencia por enfermedad *queda en suspenso* hasta que el beneficiario de la pensión diferida *cumpla las edades requeridas por la Ley de Retiro* y comience a recibir dicha pensión; por ser ese "el momento cuando más se necesita ...". No tiene razón.

 Las autoridades nominadoras están obligadas a satisfacer el pago global de las licencias acumuladas por el empleado al momento en que éste se separa o desvincula del servicio y no pueden diferir dicha liquidación hasta el momento en que éste cumpla la edad requerida por la Ley de Retiro para ser acreedora a la pensión. Veamos.

 El pago global de la licencia por enfermedad acumulada responde al derecho adquirido por el empleado por los servicios prestados, derecho que ha venido acumulando durante los diez (10) años de servicio en el empleo público requeridos por la ley.[5] El pago de la pensión diferida responde al dinero que en aportaciones acumuladas dicho empleado ha venido haciendo al Sistema de Retiro. 3 L.P.R.A. sec. 763. Dentro de estas aportaciones monetarias *no está incluido el valor monetario del tiempo acumulado en concepto de vacaciones o licencia por enfermedad no agotadas por el empleado.* Son dos (2) derechos distintos del empleado. Tan es así que la pensión diferida por años de servicio la tiene que satisfacer el Sistema de Retiro a tenor con la Ley Núm. 447, *supra,* mientras que la liquidación global de las licencias tiene que satisfacerla la agencia con-

---

[5] La Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 *et seq.*), dispuso que las agencias a quienes la ley le aplica dispondrían por reglamento todo lo relativo a los beneficios marginales de licencia por enfermedad, vacaciones, etc. 3 L.P.R.A. sec. 1355. Así que lo que cada empleado acumule en licencias depende de la reglamentación de cada agencia.

cernida, a tenor con lo dispuesto en el Art. 2 de la Ley Núm. 125, *supra*, 3 L.P.R.A. sec. 703a.

De ahí que el Art. 2 de la Ley Núm. 125, *supra*, disponga que al empleado acogido al Sistema de Retiro "se le pague y se le pagará ... la licencia por enfermedad ... a su separación del servicio ...". El término "pagará", si bien en algún contexto puede denotar un tiempo futuro, aquí denota un *mandato expreso*. El pago hay que hacerlo al momento de la separación y no luego. La utilización del término en tiempo futuro lo que resalta es que el mandato de pago debe cumplirse al momento de la separación, momento que será un tiempo futuro para los empleados que estén trabajando y a los cuales se dirige la protección de la ley.

Concluimos, pues, que la utilización del verbo "pagar" en dos (2) ocasiones distintas en dicha disposición de ley enfatiza que el pago hay que hacerlo tan pronto ocurre la separación del servicio y no en un momento posterior. Cualquier interpretación administrativa en contrario carece de validez legal.

De ello se desprende que un empleado participante que se acoge a la jubilación bajo el palio de una pensión diferida según el Art. 6 de la Ley de Retiro, *supra*, 3 L.P.R.A. sec. 766(A), tiene derecho a que la Agencia de la cual se separa le pague en ese momento lo que en concepto de licencia por enfermedad tenga acumulado a su favor.

Una interpretación en contrario subvertiría los propósitos de la Ley Núm. 125, *supra*. Sin duda que será muy probable que un empleado participante que se separa a temprana edad del servicio con derecho a la pensión diferida prefiera agotar la licencia por enfermedad, debida o indebidamente, si conoce que tendrá que esperar a tener cincuenta y ocho (58) años para recibir el pago global de esta licencia; sin intereses y con la correspondiente deva-

luación del poder adquisitivo de ese dinero. Además, ¿quién le asegura que la agencia deudora no desaparecerá por acción ejecutiva o legislativa durante el tiempo de espera? ¿Quién pagará entonces? ¿Quién le asegura que estará vivo para cobrarla? ¿Quién cobraría? ¿Es un derecho transferible a sus herederos?

Todas esas interrogantes las despejó el legislador al ordenar el pago al momento de la separación del participante.

También, ¿cómo exigirle al participante del Sistema de Retiro que espere hasta la edad de cobrar la pensión para hacer efectiva tal licencia cuando ello no se le impone al que no es participante? La interpretación propuesta por el Estado en ese sentido afectaría adversamente la solvencia del Sistema de Retiro, pues ante tal situación es razonable concluir que el empleado participante optaría por retirar sus aportaciones antes de separarse y así advenir no participante para poder hacer inmediatamente efectivo su derecho a tal licencia.

Por último, nos parece infundado el temor del Estado de que nuestra interpretación se preste para que el empleado que se retira del servicio público se reintegre posteriormente dándole la "oportunidad de cobrar la licencia de enfermedad acumulada en múltiples ocasiones, burlando de esta forma el propósito de la ley". Solicitud de revisión, pág. 10.

 En primer lugar, la ley requiere que en caso de los empleados participantes éstos se acojan a la jubilación, lo que presupone que al momento de la separación el empleado tenga un mínimo de diez (10) años de servicios cotizados a retiro y prestados en el servicio público. En el caso de los no participantes requiere también por lo menos diez (10) años de servicios prestados. En segundo lugar, la agencia sólo paga lo que le debe al empleado, esto es, se satisface el importe de un derecho adquirido. Satisfecho

ese importe, el empleado que regrese al servicio tendrá que acumular nuevamente la licencia para ser acreedor nuevamente al pago. Por ello no constituye la doble compensación prohibida por el Art. 177 del Código Político, 3 L.P.R.A. sec. 551. En cuarto lugar, hemos reconocido que la renuncia que se utiliza como mecanismo procesal para *pasar de un puesto a otro* no es suficiente para que el empleado advenga acreedor al pago. En tal caso, sólo procede *la transferencia de tal licencia a la nueva agencia. Aut. de Puertos v. Mun. de San Juan,* supra. En último lugar, y no por ello menos importante, consideramos que el empleado público no está ávido de renunciar a su puesto con el único propósito de cobrar las licencias. Esa no es su motivación principal para tal acción. Resulta aquí ilustrativo lo expuesto en el Informe Conjunto de las Comisiones de Gobierno y Hacienda del Senado sobre el P. de la C. 1584 (el que luego se convirtió en la Ley Núm. 37, *supra*) al proponer la derogación del entonces vigente Art. 4 de la Ley Núm. 125, *supra*. Dicho artículo, derogado mediante la Ley Núm. 37, *supra*, disponía:

Artículo 4.

*Ningún funcionario o empleado, a quien se le hubiere efectuado un pago global por vacaciones acumuladas podrá ser empleado por un departamento, agencia o corporación pública del Estado Libre Asociado de Puerto Rico antes de que transcurra un período posterior al cese equivalente al que sirvió de base para calcular el pago global, a menos que dicho funcionario o empleado reembolse al Gobierno una suma de dinero correspondiente al lapso no transcurrido del período posterior al cese.* El departamento, agencia o corporación pública que reempleare a la persona procederá a acreditarle licencia de vacaciones por el período equivalente al reembolso.

Cualquier cantidad de dinero reembolsada por el anterior concepto será remesada al Secretario de Hacienda, quien la acreditará según corresponda de acuerdo con los reglamentos aprobados por dicho funcionario, excepto en los casos de agencias o corporaciones públicas cuyos fondos no estén bajo la custodia del Secretario de Hacienda, en cuyo caso el reembolso se

hará directamente a tales agencias o corporaciones públicas. (Énfasis suplido.) 1967 Leyes de Puerto Rico 401, 403.

Al proponer su derogación, señalaba el referido Informe Conjunto:

La prohibición de referencia pretende impedir el que los empleados puedan renunciar a sus puestos con la sola intención de cobrar el importe de la licencia acumulada creando así un círculo vicioso de separaciones y de reingresos al servicio. Consideramos que esta disposición, dentro de un concepto realista de administración de personal no cumple un propósito sabio. *Nos parece ingenua esta proposición ante la realidad de lo que constituye el empleo para un individuo. El riesgo de perder su empleo que envuelve para un empleado público el renunciar con el único propósito de lograr pago global, constituye mayor incentivo para no renunciar que el tener que reembolsar.* (Énfasis suplido.) Informe Conjunto de las Comisiones de Gobierno y Hacienda sobre el P. de la C. 1584 de 21 de abril de 1972, pág. 5.

## V

En el caso de autos el recurrido solicitó a la autoridad nominadora (Sistema de Retiro) el pago de la licencia por enfermedad acumulada y no utilizada al momento de su separación del servicio público. Éste se acogió a la pensión diferida dispuesta en la Ley de Retiro. 3 L.P.R.A. sec. 766(A). Al momento de su separación, tenía treinta y cuatro (34) años de edad, había prestado más de diez (10) años de servicio y era un participante del sistema de retiro. Bajo la posición del Estado habría tenido que esperar hasta el año 2010 para cobrar la licencia por enfermedad que había acumulado en sus años de servicio. En esa fecha cumpliría los cincuenta y ocho (58) años de edad.

A tenor con lo aquí resuelto, no tendrá que esperar a esa fecha. El Sistema de Retiro, agencia para la cual laboraba, viene obligada a pagarle la licencia que tuviera acumulada, hasta un máximo de noventa (90) días, efectivo desde

el momento en que presentó su renuncia y se separó del servicio. público.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García no intervino.