EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Narciso E. Matos Nazario<br>        Demandante-Recurrido<br><br>                v.<br><br>Autoridad de Carreteras y Transportación;<br>Administración de Facilidades y Servicios de Salud<br>      Demandados-Peticionario el último | Certiorari<br><br>2001 TSPR 57 |

Número del Caso: CC-2000-509

Fecha: 23/abril/2001

Tribunal de Circuito de Apelaciones:
                                Circuito Regional I


Juez Ponente:
                                Hon. Liana Fiol Matta

Abogado de la Administración de Facilidades y Servicios de Salud:
                                Hon. Procurador General

Abogado de la Autoridad de Carreteras y Transportación:
                                Lcdo. Moisés Avila Sánchez


Abogada del Departamento de Salud:
                                Lcda. Nyvia E. Milian Falero

Abogado de la parte recurrida:
                                Lcdo. Rafael García Ortega



Materia: Reclamación de Salarios



        Este documento constituye un documento oficial del Tribunal Supremo que está
        sujeto a los cambios y correcciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Narciso E. Matos Nazario

    Demandante-recurrido

      vs.                              CC-2000-509      CERTIORARI

Autoridad de Carreteras y
Transportación; Administración
de Facilidades y Servicios de
Salud

    Demandados-peticionario
    el último

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 23 de abril de 2001

La controversia a resolver en el presente caso es si las disposiciones de la Ley Núm. 12 de 5 de mayo de 1953, según enmendada, 3 L.P.R.A. secs. 696-698, sobre <u>transferencia de licencia por vacaciones y por enfermedad</u>, entre el Servicio Exento y los Servicios por Oposición o sin Oposición del Personal del Gobierno de Puerto Rico, <u>aplican</u> a situaciones en que un empleado de una agencia o instrumentalidad del Gobierno de Puerto Rico solicita y obtiene una <u>licencia sin sueldo</u> para prestar servicios temporeros en otra agencia o instrumentalidad; de concluir en la afirmativa, debemos determinar a cual de las dos agencias o instrumentalidades le

corresponde hacer el pago del exceso por licencias de vacaciones y enfermedad acumuladas, cuando dicho exceso surge a raíz de la prestación de servicios en virtud de la mencionada licencia sin paga.

A la luz de lo resuelto en Autoridad de los Puertos v. Municipio de San Juan, 123 D.P.R. 496 (1989), concluimos que las disposiciones de la Ley Núm. 12, ante, aplican a situaciones como las del caso de autos. La agencia, instrumentalidad, o corporación pública, que obtiene los servicios del empleado en virtud de una licencia sin sueldo, está obligada a aceptar la transferencia del balance máximo transferible por dicha Ley, en concepto de licencias por vacaciones y enfermedad acumuladas en su empleo regular. Dicho de otra manera, el balance que tenga el empleado acumulado hasta el momento en su puesto original se transfiere, hasta el límite máximo transferible, a la segunda dependencia a la cual pasa al amparo de la licencia sin sueldo que le fue concedida por la primera. Así las cosas, cuando el empleado reingrese a su puesto original, luego de haber concluido su licencia sin sueldo, se da una segunda transferencia de los balances acumulados por concepto de vacaciones y enfermedad en la segunda agencia, de conformidad con el límite máximo transferible dispuesto en la Ley Núm. 12, ante.

Resolvemos que, no obstante las circunstancias particulares de este caso, en donde la agencia que recibió los servicios del empleado no tenía reglamentación aprobada en cuanto al pago del exceso por concepto de licencias acumuladas, le corresponde de todas maneras a dicha agencia satisfacer el pago por el exceso de dichas licencias de vacaciones y enfermedad acumulado mientras éste rindió servicios bajo su supervisión.

I

El demandante recurrido, Narciso E. Matos Nazario, se desempeñó por aproximadamente diecinueve (19) años como ingeniero civil en la Autoridad de Carreteras y Transportación, en adelante ACT, hasta el 30 de septiembre de 1993. En dicha fecha le fue concedida una licencia sin sueldo por la ACT para que éste pasara a prestar servicios temporeros en un puesto de confianza en la Administración de Facilidades y Servicios de Salud, en adelante AFASS, tarea que realizó por dos (2) años consecutivos, desde el 1 de octubre de 1993 hasta

el 13 de octubre de 1995.[1] Al momento de serle concedida al demandante la referida licencia sin sueldo, en octubre de 1993, éste tenía acumulados en la ACT, cuarenta y seis días y medio (46.5) por concepto de licencia de vacaciones y noventa (90) días de licencia por enfermedad.[2] Por otra parte, durante los dos años que rindió servicios en AFASS, éste acumuló allí cuarenta y dos (42) días de licencia de vacaciones y treinta y seis días y medio (36.5) por enfermedad.[3]

Una vez concluido el periodo de dos años de licencia sin sueldo, el Sr. Matos Nazario renunció a su puesto de confianza en AFASS, efectivo el viernes 13 de octubre de 1995, para así reintegrarse el próximo lunes 16 de octubre, a sus labores en la ACT, sin que mediara interrupción o desvinculación alguna del sistema de servicio público. Una vez reintegrado a su puesto original en la ACT, el Sr. Matos Nazario reclamó en varias ocasiones, tanto a la ACT como a AFASS, el pago de licencias por vacaciones y enfermedad acumuladas en exceso del máximo reglamentario establecido para dichas licencias en ambas dependencias.[4]

---

[1] La licencia originalmente concedida por el periodo de un año, le fue extendida por un año adicional, a solicitud del propio demandante, debido a que el Director Ejecutivo de AFASS interesaba retener sus servicios. Véase Apéndice a Petición de Certiorari, a la pág. 50.

El Reglamento de Personal de la Autoridad de Carreteras y Transportación Número 5523 de 3 de diciembre de 1996, dispone en su Sección 15.4(10):

> "Licencia sin Paga"
> a.        Además de las licencias sin paga provistas en otras Secciones de nuestro Reglamento, se concederán las siguientes:
>     1) A empleados con puestos regulares, para prestar servicios en otra agencia del gobierno o entidad privada, de determinarse que la experiencia que derive el empleado le resolverá una necesidad comprobada de adiestramiento a la agencia o al servicio público...".
>     2)

[2]    Dichos balances supuestamente quedaron en estado de suspenso durante el tiempo de vigencia de la licencia sin sueldo. Comunicación del Ing. Sergio L. González, Director Ejecutivo de la ACT a la Lcda. Marta Rivera Plaza, Directora Ejecutiva de AFASS, Apéndice, págs. 52–53.

[3]    Véase Apéndice, pág. 51. Carta de 5 de diciembre de 1995 de la Jefa Interina de Area de Personal de AFASS dirigida al Ing. Sergio González, Director Ejecutivo de la ACT.

[4] El Reglamento de Personal de la Autoridad de Carreteras y Transportación Número 5523 de 3 de diciembre de 1996 dispone, en su Sección 15.4 sobre Licencias:

> 1.       Licencia de vacaciones
>     a.       ...
>     b.       ...
>     c.       Los empleados podrán acumular la misma hasta un máximo de sesenta (60) días laborables al finalizar cada año natural.
> 2.       Licencia por enfermedad
>     a.                  ...
>     b.                  ...

La ACT negó su responsabilidad en cuanto al pago del exceso reclamado, mediante carta dirigida al demandante con fecha de 11 de julio de 1996. En dicha carta, la ACT alegó que no tenía obligación alguna de pagar el exceso de licencias acumuladas logrado mientras prestaba servicios en AFASS, y que era a esta agencia a quien le correspondía desembolsar dicho exceso. AFASS, por su parte, rechazó todo tipo de responsabilidad en cuanto al pago del exceso de días acumulados, mediante carta dirigida al Director Ejecutivo de la ACT, Ing. Sergio González, con fecha de 14 de octubre de 1996.

Finalmente, mediante carta de 25 de noviembre de ese mismo año, dirigida al demandante por la ACT, ésta resolvió acreditarle a éste trece días y medio (13.5) de vacaciones de los cuarenta y dos (42) que éste acumuló en AFASS para así cumplir con el máximo reglamentario de sesenta (60) días y no le acreditó ninguno de los treinta y seis días y medio (36.5) que éste acumuló por enfermedad en tal lugar por razón de que el demandante ya había acumulado el tope de noventa (90) días reglamentario. Alegó ACT, además, que era a AFASS a quien le correspondía satisfacer el balance restante por concepto de vacaciones (28.5 días) y el exceso acumulado por concepto de enfermedad (36.5 días).

El 3 de junio de 1997, el Sr. Matos Nazario radicó una reclamación ante la Junta de Apelaciones del Sistema de Administración de Personal (JASAP), solicitando la resolución del "impasse existente" entre la ACT y la AFASS en cuanto a cual de las dos correspondía realizar el pago del exceso reclamado por concepto de licencia de vacaciones y enfermedad. JASAP desestimó dicha reclamación alegando que, por disposición de la Sección 7.14 de la Ley de Personal del Servicio Público, Ley Núm. 5 de 14 de octubre de 1975, no tenía

---

    c.                         Los empleados podrán acumular su licencia por enfermedad hasta un máximo de noventa (90) días laborables al finalizar cada año natural.

El Reglamento de Personal de la Administración de Facilidades y Servicios de Salud de 7 de junio de 1978, enmendado el 16 de mayo de 1990, dispone, en su Sección 11.4 sobre Licencias:

    1.  Licencia de Vacaciones
         a. ...
         b. ...
         c. Los empleados podrán acumular la misma hasta un máximo de sesenta (60) días laborables al finalizar cada año natural.
    2.      Licencia por Enfermedad
         a.    ...
         b.    ...
         c. La licencia por enfermedad se podrá acumular hasta un máximo de noventa (90) días laborables al finalizar cualquier año natural.

La suma de los días acumulados en ambas dependencias por concepto de licencias conlleva un total de ochenta y ocho días y medio (88.5) acumulados por concepto de vacaciones y ciento veintiséis (126) días por enfermedad; configurándose así un exceso de veintiocho días y medio (28.5) por vacaciones y treinta y seis días y medio (36.5) por enfermedad.

jurisdicción en cuanto a la reclamación del Sr. Matos Nazario pues dicha sección de ley le impide entender en reclamaciones instadas por empleados de confianza.[5]

Así las cosas, el 11 de septiembre de 1997, el Sr. Matos Nazario radicó demanda civil sobre reclamación de salarios ante la Sala de San Juan del Tribunal de Primera Instancia, solicitando de dicho foro que determinara a cual de las dos, la ACT o la AFASS, le correspondía satisfacer la cantidad de dinero a la cual era acreedor por virtud del exceso en licencias que había acumulado por vacaciones y por enfermedad mientras trabajaba en AFASS. Solicitó, además, el demandante que dicho foro dictara sentencia a su favor disponiendo el pago del exceso en cuestión, por la cantidad ascendente a catorce mil novecientos cincuenta dólares ($14,950.00), que alegó era la cantidad monetaria adeudada por concepto de dicho exceso. Reclamó, por último, indemnización por gastos, costas y una suma razonable por honorarios de abogado.

La ACT contestó la demanda el 22 de septiembre de 1997, negando toda responsabilidad sobre la deuda reclamada y radicó demanda contra co-parte contra AFASS, aduciendo que ésta era la única responsable de liquidar el exceso de licencia regular y por enfermedad acumulado por el demandante durante su incumbencia y trabajo para dicha agencia. A finales de enero de 1998, el Estado Libre Asociado de Puerto Rico, en representación de AFASS, contestó la referida demanda, alegando que no estaba obligado a pagar al demandante dinero alguno por el exceso acumulado de licencias, correspondiendo dicho pago a la ACT.

Así las cosas, el 4 de febrero de 1998, el tribunal de primera instancia ordenó a los abogados y clientes a reunirse con el propósito de llegar a ciertos acuerdos y a una posible transacción, dada la naturaleza de los asuntos planteados.[6] Conforme a tal orden, los abogados de las partes celebraron una reunión el 27 de mayo de dicho año. En una moción informativa radicada por la parte demandante, se le notificó al tribunal sobre lo acontecido en dicha reunión, a saber: que las partes habían llegado a un consenso en cuanto a las controversias a ser dirimidas habían acordado solicitar señalamiento de vista para discutir el estado de los procedimientos, sugiriendo como fecha para dicha vista el 18 ó 19 de agosto de 1998. A base de tal sugerencia, se celebró una vista transaccional el 18 de agosto. A ésta, comparecieron los representantes legales del demandante y de la ACT, pero no así la representación legal de AFASS.

De acuerdo a la "minuta" que recoge los procedimientos acaecidos durante dicha vista, en dicho día se debía informar al tribunal sobre si el Departamento de Justicia --en representación de AFASS-- estaba en disposición de llegar a un acuerdo para pagar las sumas reclamadas. Por razón de la incomparecencia de la representación legal de AFASS, se le concedió al Departamento de Justicia el término de quince (15) días para informar al Tribunal

---

[5] Véase Resolución notificada el 31 de julio de 1997, Apéndice, pág. 64.
[6] Véase Orden del Tribunal de Primera Instancia, Sala de San Juan. Apéndice, a la pág. 76.

su posición y <u>para mostrar causa por la cual no debían ser eliminadas sus alegaciones</u>.[7] Dicho foro señaló, además, la celebración de la conferencia con antelación al juicio para el día 7 de octubre de 1998.

El Departamento de Justicia respondió mediante moción el 31 de agosto de ese mismo año, excusando su incomparecencia a la vista del 18 de agosto, solicitando treinta (30) días adicionales para expresar su posición respecto a la reclamación entablada en su contra y solicitando, además, la transferencia de la conferencia con antelación al juicio para fecha posterior, sugiriendo, entre otras fechas, el 12 de noviembre de 1998. El tribunal accedió a tal solicitud, mediante orden del 15 de septiembre de ese año, transfiriendo la mencionada conferencia para el 12 de noviembre de 1998.

Llegado tal día, comparecieron a dicha conferencia las representaciones legales del demandante y de la ACT, <u>no compareciendo, por segunda ocasión, la representación legal de AFASS</u>. Según consta en la "minuta" de la conferencia, el tribunal procedió a <u>eliminar</u> las alegaciones de AFASS y a anotarle la <u>rebeldía</u> por razón de las múltiples incomparecencias de dicha parte e incumplimientos con las órdenes del tribunal, haciéndose constar el hecho de que ya el Departamento de Justicia había sido <u>apercibido previamente</u> sobre las posibles consecuencias de sus incumplimientos. AFASS, representado por el Departamento de Justicia, solicitó reconsideración, esto es, que se dejara sin efecto la anotación de rebeldía en su contra, la cual fue denegada de plano por el foro de instancia.

El tribunal de instancia procedió a dictar <u>sentencia</u> en rebeldía en contra de AFASS, <u>sin la celebración de una vista en su fondo</u>, archivándose en autos copia de la misma el día 30 de julio de 1999. Impuso a AFASS el pago inmediato al demandante de la suma de catorce mil novecientos cincuenta dólares ($14,950.00), en virtud del exceso de 28.5 días acumulados por éste en concepto de licencia de vacaciones y de 36.5 días acumulados en concepto de enfermedad, correspondiente al periodo de tiempo en que ofreció servicios profesionales en AFASS a raíz de la licencia sin sueldo que le fue concedida por la ACT. El foro de instancia basó su decisión en lo resuelto por este Tribunal en el caso <u>Autoridad de los Puertos</u> v. <u>Municipio de San Juan</u>, ante.

Inconforme, AFASS presentó recurso de apelación ante el Tribunal de Circuito de Apelaciones, el cual <u>confirmó</u> la sentencia dictada por el foro de instancia.[8] El foro

---

[7] Véase Minuta del Tribunal de Primera Instancia, vista transaccional celebrada el 18 de agosto de 1998. Apéndice, pág. 79.

[8] En dicho recurso, imputó al tribunal de primera instancia la comisión de los siguientes errores:

"Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia en Rebeldía contra la Administración de Facilidades y Servicios de Salud (AFASS) sin que el demandante haya probado en el juicio en su fondo que tenía derecho al remedio solicitado, como dispone la Regla 45.5 de las de Procedimiento Civil de 1979;

apelativo intermedio resolvió que no era necesaria, debido a las circunstancias particulares del caso de autos, la celebración de una vista en su fondo para recibir prueba y poder dictar sentencia en rebeldía en contra del Estado Libre Asociado o alguna agencia o instrumentalidad de éste, según lo requiere la Regla 45.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.45.5[9]; esto, debido a que, según advirtió del expediente y de los escritos de las partes, los hechos esenciales que dieron lugar a la reclamación y al caso de autos, nunca estuvieron en disputa, por lo que la controversia siempre giró en torno a un asunto estrictamente de derecho, a saber: determinar a cuál agencia correspondía satisfacer el exceso reclamado y si era de aplicación o no al caso de autos, las disposiciones de la Ley Núm. 12, ante.

Concluyó, además, el foro apelativo intermedio que al pasar el Sr. Matos Nazario de la ACT a AFASS, ésta última agencia tenía que acreditarle los balances de licencia por vacaciones y por enfermedad acumulados en su empleo anterior, independientemente de que el traslado se hubiera hecho a través de una licencia sin sueldo; que al momento de éste pasar de la ACT a AFASS en primera instancia, la ACT no tenía que liquidar nada al demandante pues el total de días que tenía acumulado no excedía el total máximo acumulable por reglamentación de la propia Autoridad; que ya cuando el demandante pasó nuevamente de la AFASS a la ACT, éste sí cualificaba para el pago en efectivo pues a esa fecha ya había acumulado días de licencia por vacaciones y enfermedad en exceso de lo establecido en el reglamento de la propia AFASS; que aun cuando la reglamentación de la AFASS no proveía para el pago del exceso, ésta debía hacerlo para así evitar una situación de enriquecimiento injusto a favor de dicha agencia pues fue ésta la que se benefició de los servicios prestados por el empleado mientras estuvo vigente la licencia sin sueldo; razón por la cual AFASS tenía el deber de satisfacer al demandante la suma de dinero adeudada en concepto del exceso según dispuso el foro de instancia.

---

Erró el Honorable Tribunal de Primera Instancia al no acoger la solicitud de la Administración de facilidades y Servicios de Salud (AFASS) presentada en su Moción de Reconsideración, de dejar sin efecto la anotación de rebeldía contra el Estado;

Erró el Honorable Tribunal de Primera instancia al imponerle a la Administración de Facilidades y Servicios de Salud (AFASS) el pago del exceso Acumulado de licencia por vacaciones y de enfermedad durante el ofrecimiento de los servicios profesionales del demandante en AFASS."

[9] La Regla 45.5 dispone:

No se dictará ninguna sentencia en rebeldía contra el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades ni contra un funcionario en su carácter oficial, a menos que el reclamante pruebe, a satisfacción del tribunal, su reclamación o derecho al remedio que solicita.

Por no estar de acuerdo con la actuación del Tribunal de Circuito de Apelaciones, AFASS acudió en revisión --vía certiorari-- ante este Tribunal. La peticionaria alega que procede revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones, confirmatoria de la emitida por el foro de instancia, debido a que dicho foro apelativo incidió :

> "... al adjudicarle a AFASS el pago del exceso de licencias acumuladas por el concepto de vacaciones y enfermedad del señor Matos Nazario."

Expedimos el recurso; específicamente le ordenamos a las partes ilustrar al Tribunal sobre si la celebración de una vista evidenciaria en el presente caso era mandatoria, por ser una parte el Estado Libre Asociado de Puerto Rico, a pesar del hecho de que la controversia planteada era una estrictamente de derecho y no de hechos.[10] Ambas partes --incluso la propia parte que levantó como error ante el tribunal apelativo que el foro de instancia hubiera dictado sentencia en contra del Estado sin la celebración de una vista previa-- expresaron en sus respectivos alegatos estar de acuerdo en que la celebración de dicha vista no era necesaria ya que no existe controversia de hecho alguna; incluso, no existiendo controversia sobre la suma de dinero adeudada al demandante.[11] Contando con la comparecencia de ambas partes, y estando en condiciones de resolver, procedemos a así hacerlo.

## II

### -A-

No obstante las aseveraciones de las partes, en torno a la no necesidad de la celebración de la vista en rebeldía en el presente como condición para que se dictare sentencia en contra del Estado Libre Asociado de Puerto Rico, consideramos pertinente expresarnos al respecto.

---

[10] Resolución del Tribunal Supremo de Puerto Rico, de fecha de 31 de julio de 2000.

[11] Nos señala la peticionaria AFASS en su alegato ante este Tribunal, "entendemos que una vista en el caso de autos no era necesaria...en el caso de autos lo que existe es una controversia de derecho a los efectos de establecer a qué agencia le corresponde el pago del exceso de licencias acumuladas cuando el mismo surge de una licencia sin sueldo que una agencia le otorga a un empleado para que preste servicios temporeros en otra. Una vista evidenciaria no hubiese variado la anterior controversia de derecho." Alegato de la peticionaria AFASS, págs. 6-7.

Por su parte, nos señala la recurrida ACT en su respectivo alegato, "en el caso de autos no existe, ni existió nunca una controversia genuina de hechos. La única controversia existente...era una de DERECHO. Por lo tanto, la celebración de una vista evidenciaria en nada iba a abonar a la tramitación expedita y justa del caso de epígrafe...lo que restaba por realizar era dictar sentencia aplicando el derecho a los hechos incontrovertidos." Alegato de la recurrida ACT, pág. 6.

La Regla 45.5 de las Reglas de Procedimiento Civil establece que:

"45.5 Sentencia contra el Estado Libre Asociado de Puerto Rico

No se dictará ninguna sentencia en rebeldía contra el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades ni contra un funcionario en su carácter oficial, a menos que el reclamante pruebe, a satisfacción del tribunal, su reclamación o derecho al remedio que solicita."[12]

Ello no obstante ––y dados los hechos particulares del presente caso, en el cual ambas partes están contestes en que <u>no</u> hay hecho alguno en controversia y que únicamente el caso se circunscribe a resolver una cuestión de derecho, razón por la cual resulta totalmente innecesaria la celebración de una vista evidenciaria a nivel de instancia–– <u>somos del criterio que devolver el caso al tribunal de instancia, para la celebración de una vista, sería un ejercicio en futilidad; razón por la cual nos abstenemos de hacerlo.</u>

–B–

La peticionaria AFASS alega que tanto el tribunal de instancia, como el tribunal intermedio apelativo, erraron al concluir que le correspondía a ésta satisfacer el pago del exceso en concepto de licencias de vacaciones y enfermedad que acumuló el Sr. Matos Nazario mientras rendía servicios en AFASS, en virtud de una licencia sin sueldo conferida a éste por la ACT. <u>No tiene razón</u>.

Plantea la peticionaria que la cuestión de derecho presente en el caso de autos es una novel pues debemos determinar, como mencionáramos previamente, si la Ley Núm. 12, ante, sobre transferencias de licencias de vacaciones y enfermedad acumuladas por empleados gubernamentales dentro del servicio público, al éstos pasar de una entidad gubernamental a otra a rendir sus servicios, aplica cuando un empleado de una agencia obtiene una licencia sin sueldo para prestar servicios temporeros en otra agencia. Entendemos que las disposiciones del referido estatuto aplican a situaciones como las del caso de autos. Veamos.

Comenzamos analizando la naturaleza de las licencias sin sueldo. Las mismas se consideran tradicionalmente como un privilegio que se concede a empleados regulares para que éstos se ausenten de su trabajo para proseguir estudios, adquirir experiencia provechosa para el servicio, y/o prestar servicios en otro lugar de trabajo. Precisamente se distinguen por ser un beneficio marginal concedido a empleados permanentes o regulares por cierto y determinado tiempo, <u>conservando</u> el puesto donde prestan servicios regularmente hasta su retorno.[13] La seguridad del retorno del empleado al puesto que ocupa es condición *sine qua non* para la concesión de dicha licencia sin sueldo, por lo que utilizar dicho permiso para

---

[12] Véase: Rafael Hernández Colón, <u>Práctica Jurídica de Puerto Rico</u>, Ed. Michie de Puerto Rico, 1997, pág. 218; José A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, Tomo II, Publicaciones JTS, 2000, pág. 760.

[13] Véase Opinión del Secretario de Justicia Núm. 1 de 13 de enero de 1993.

brindar servicios temporeros en otros lugares de trabajo <u>no equivale a una renuncia al puesto original ni conlleva la desvinculación del empleado del puesto que ocupa.</u>[14]

La única limitación que conlleva la concesión de una licencia sin sueldo a un empleado es que dicho empleado no tendrá derecho a acumular licencias de vacaciones ni enfermedad en su empleo regular de origen durante la vigencia de la misma.[15]

El Reglamento de Personal de la ACT[16], en virtud del cual se le concedió al demandante la licencia sin sueldo para prestar servicios en AFASS, específicamente dispone en su Sección 15.4 (10) que:

> a) Además de las licencias sin paga provistas en otras Secciones de nuestro Reglamento, se concederán las siguientes:
> 1) A empleados con puestos regulares, para prestar servicios en otra agencia del gobierno, entidad privada, de determinarse que la experiencia que derive el empleado le resolverá una necesidad comprobada de adiestramiento a la agencia o al servicio público.

Además se señala, en lo pertinente a la licencia de vacaciones durante la vigencia de una licencia sin paga concedida a un empleado regular, en la misma Sección 15.4 (10):

> e)      Disposiciones Generales
> 1.                            ...
> 2.                            ...
> 3.                            Si a un empleado regular se le concede una licencia sin sueldo, no será menester que éste agote la licencia de vacaciones que tenga acumulada antes de comenzar en disfrute de licencia sin sueldo.

En cuanto a las licencias por enfermedad y por vacaciones dispone:

> Sección 15.4– Licencias
> 1.    Licencia de vacaciones
>       a. ...
>       b. ...
>       c. Los empleados podrán acumular la misma hasta un máximo de sesenta (60) días laborables al finalizar cada año natural.
> 2.    Licencia por enfermedad
>       a. ...
>       b. ...
>       c. Los empleados podrán acumular su licencia por enfermedad hasta un máximo de noventa (90) días laborables al finalizar cada año natural.

Por otra parte, el Reglamento de Personal de AFASS[17], en su Sección 11.4, dispone, en lo pertinente a la concesión de licencias:

> 1.    Licencia de Vacaciones
>       a. ...
>       b. ...
>       c. Los empleados podrán acumular la misma hasta un máximo de sesenta (60) días laborables al finalizar cada año natural.
> 2.    Licencia por Enfermedad
>       a. ...

---

[14] Id.

[15] Id.

[16] El Reglamento de Personal de la Autoridad de Carreteras y Transportación Número 5523 de 3 de diciembre de 1996, anuló el Reglamento Número 4769 de 6 de agosto de 1992, vigente al momento en que se le concedió la licencia sin paga al demandante. Ambos disponen exactamente lo mismo en cuanto a la concesión de licencias sin paga.

[17] Reglamento de Personal de la Administración de Facilidades y Servicios de Salud aprobado el 7 de junio de 1978, según enmendado el 16 de mayo de 1990.

    b. La licencia por enfermedad se podrá acumular hasta un
       máximo de noventa (90) días laborables al finalizar cada
       año natural.

Al momento del demandante Matos Nazario acogerse al disfrute de una licencia sin sueldo en ACT, éste tenía un balance de licencia de vacaciones acumulada de cuarenta y seis días y medio (46.5) y noventa (90) días por concepto de enfermedad. <u>De manera que, a dicho momento, no se había configurado un balance de licencias acumuladas en exceso del límite máximo reglamentario dispuesto por la ACT.</u>

Reseñadas las disposiciones reglamentarias, procedemos a analizar las disposiciones de la Ley Núm. 12, ante, en cuanto a la transferencia del mencionado balance acumulado a AFASS, al momento en que el demandante comenzó a rendir servicios profesionales en dicha agencia.

La citada Ley 12 regula la <u>transferencia</u> de licencias de vacaciones regulares y por enfermedad que hayan acumulado los empleados públicos al <u>pasar</u> éstos de un puesto a otro en los servicios exentos, por oposición y sin oposición, del Gobierno de Puerto Rico. En su Artículo 1 específicamente se dispone:

> "Se autoriza la transferencia de licencia por vacaciones y por enfermedad, acumulada por un funcionario o empleado del Estado Libre Asociado de Puerto Rico al <u>pasar</u> de un puesto a otro en los Servicios Exento, por Oposición, o sin Oposición, del Gobierno de Puerto Rico." (Subrayado nuestro)." [18]

Este Tribunal, en el caso de <u>Autoridad de los Puertos</u> v. <u>Municipio de San Juan</u>, ante, se expresó en torno a la procedencia de la transferencia de vacaciones y de enfermedad acumuladas por un empleado, independientemente de que en la transacción de personal concernida estuviesen implicadas agencias comprendidas en el servicio exento, por o sin oposición, enfatizando el hecho de que <u>nunca</u> se concibió dicha pieza legislativa como un mecanismo para que el empleado recibiera el pago de vacaciones y licencias acumuladas cuando éste <u>pasaba</u> de un servicio a otro, aun cuando determinadas agencias estuvieran excluidas de la Ley de Personal del Servicio Público, ante.

En dicho caso <u>específicamente resolvimos</u> que la <u>transferencia</u> del balance de las licencias acumuladas por concepto de vacaciones y enfermedad <u>es obligatoria</u> para todas las agencias del Estado Libre Asociado de Puerto Rico. "La ley, en ese sentido, <u>le impone a la agencia que recibe al empleado la obligación de acreditar y de aceptar las licencias acumuladas</u>, siempre que el empleado <u>pase</u> de un puesto a otro o de una agencia a otra dentro del servicio público." <u>Autoridad de los Puertos</u> v. <u>Municipio</u>, ante, a la pág. 505. (Subrayado nuestro)[19].

---

[18] 3 L.P.R.A. sec. 696.

[19] Véase, además, Opinión del Secretario de Justicia Núm. 1 de 13 de enero de 1993, "cuando un funcionario o empleado pasa de un puesto a otro en el servicio público, ...la transferencia de las licencias de vacaciones y por enfermedad acumuladas es obligatoria."; Opinión del Secretario de Justicia

Expresamos, además, en el referido caso, ante a la pág. 504, que la Ley Núm. 12, ante, "intenta fomentar la movilidad de los empleados públicos entre las distintas agencias del Gobierno con independencia del servicio en que estos empleados se encuentren comprendidos. Su aplicabilidad, por ende, se extiende a las distintas transacciones de personal comprendidas dentro de los distintos servicios que componen el Gobierno de Puerto Rico, salvo cuando media la desvinculación total y definitiva del empleado del servicio público."[20] (Subrayado nuestro). Enfatizamos en dicho caso el hecho de que en el Informe de la Cámara de Representantes sobre el P. del S. Núm. 91, se hizo constar que la falta de intercambio y ausencia de movilidad "no ayuda a fomentar el servicio de carrera público, puesto que, por el temor a perder las vacaciones o la licencia por enfermedad que tuvieren acumuladas, los empleados prefieren seguir en la misma agencia donde están laborando con perjuicio en innumerables ocasiones al propio desarrollo y mejoramiento del servicio público."[21] Llegamos a la conclusión en dicho caso, de que el legislador, al aprobar la Ley Núm. 12, ante, tuvo como propósito la creación de un instrumento que garantizara la permanencia del empleado dentro del servicio público, y que de igual modo se fomentara su movilidad y capacidad de superación.

Expresamos, por último, en el citado caso que el término "pasar" comprendido en dicho estatuto es uno que abarca a todo el personal del servicio público; "este término pasar de un puesto a otro o de agencia a otra es de carácter amplio y abarca a todo el sistema de personal del servicio público." Autoridad de los Puertos, ante, pág. 508. Esto añadido a la determinación que hiciéramos en ese mismo caso en relación a que la aplicabilidad de la Ley 12, ante, "se extiende a las distintas transacciones de personal comprendidas dentro de los servicios que componen el Gobierno de Puerto Rico, salvo cuando media la desvinculación total y definitiva del empleado del servicio público." Id., pág. 504.

Resulta, en consecuencia, totalmente lógica y procedente la conclusión de que la concesión de una licencia sin sueldo a un empleado, para que éste pase de una agencia de gobierno a prestar servicios profesionales temporeros en otra agencia, está debidamente comprendida dentro de las transacciones de personal abarcadas por la Ley Núm. 12. "Es principio cardinal de hermenéutica el que a las palabras [y] al lenguaje de una ley, debe dársele la interpretación que valid[a] el propósito que tuvo el legislador al aprobar la

Núm. 22 de 14 de octubre de 1993; Opinión del Secretario de Justicia Núm. 29 de 1 de diciembre de 1992.

[20] Véase además Informe de la Cámara de Representantes sobre el P. del S. Núm. 91, 31 de marzo de 1953.
[21] Id., Autoridad de los Puertos v.Municipio de San Juan, ante, págs. 504-505,; Reseño este tribunal al concluir su ponencia ,"la norma que hoy adoptamos promueve los objetivos de fomentar la carrera en el servicio público y la movilidad como pilares fundamentales para una sana administración pública. Esta norma beneficia tanto al empleado como al servicio público."

medida." <u>Muñoz Hernández</u> v. <u>Policía de Puerto Rico</u>, 134 D.P.R. 486, 497, (1993); <u>Rivera Maldonado</u> v. <u>Autoridad sobre Hogares</u>, 87 D.P.R. 453, 456, (1963).

Enfatizamos y recalcamos, nuevamente, que según lo resuelto en el caso de la <u>Autoridad de los Puertos</u>, ante, el término "pasar" es uno de carácter amplio y que específicamente determinamos en dicho caso, luego de analizar la intención del legislador al aprobar la Ley Núm. 12, que las disposiciones de dicha Ley le aplican a las distintas transacciones de personal dentro del servicio público, excepto cuando media la separación del empleado del mismo. En el caso de autos, es evidente que el Sr. Matos Nazario <u>pasó</u> de una agencia a otra cuando inicialmente fue a brindar servicios profesionales de la ACT a AFASS y que luego, por segunda ocasión, <u>pasó nuevamente</u> a la ACT al concluirse el término de vigencia de la referida licencia. El Sr. Matos nunca se retiró ni renunció del servicio público, continuó rindiendo servicios dentro del mismo ofreciendo su trabajo profesional a dos entes gubernamentales distintos sin interrupción alguna en el rendimiento del mismo.[22]

Aplicando, pues, esta normativa al caso de autos, concluimos que el foro apelativo intermedio <u>actuó correctamente</u> al resolver que, al pasar el Sr. Matos de la ACT a la AFASS, ésta última tenía que acreditarle los balances de licencia por vacaciones y por enfermedad acumulados en su empleo anterior, independientemente de que el traslado se hubiera hecho a través de una licencia sin sueldo. Situación idéntica ocurre cuando el Sr. Matos se reintegra a su puesto original en la ACT, en cuyo caso procedía una segunda transferencia de los balances mencionados. Ya en ese momento era patentemente claro que procedía dicha transferencia pues el demandante renunció a su puesto en AFASS para reintegrarse a sus funciones en la ACT.[23]

–C–

Aclarado el planteamiento sobre si procedía o no la transferencia de balances acumulados cuando el traslado de un empleado se da a través de una licencia sin sueldo, <u>pasamos a examinar que ocurre con la cantidad de días y balances máximos transferibles por ley al darse las dos transferencias en cuestión.</u>

---

[22] Una vez concluido el periodo de dos años de licencia sin sueldo, el Sr. Matos Nazario renunció a su puesto de confianza en AFASS efectivo el viernes 13 de octubre de 1995, para así reintegrarse el próximo lunes 16 de octubre, a sus labores en la ACT, sin que mediara interrupción o desvinculación alguna del sistema de servicio público.

[23] No debemos olvidar tampoco lo resuelto por este foro en el caso <u>Rodríguez Cruz</u> v. <u>Padilla Ayala</u>, 125 D.P.R. 486, 516 (1990), en cuanto a que "solamente procede la liquidación de las vacaciones acumuladas mediante el pago en efectivo de las mismas cuando la renuncia o separación del servicio produce la desvinculación del empleado." En dicho caso determinamos que el tribunal de instancia había incidido al ordenar al pago de cierta cantidad de días por concepto de vacaciones no disfrutadas. Tal decisión corrobora más aun lo resuelto hoy por este tribunal al disponer que procede la transferencia de los balances de licencias acumulados por el demandante, cuando inicialmente acudió a rendir servicios en AFASS y cuando nuevamente se reintegró a su puesto en la ACT.

Ordena la referida Ley Núm. 12, ante, en su Artículo 2, que:

"Cuando un funcionario o empleado del Gobierno del Estado Libre Asociado de Puerto Rico pase de una agencia a otra comprendida dentro de los Servicios Exento, por Oposición, o sin Oposición, la agencia en que él trabaja certificará, y la agencia que adquiera sus servicios aceptará y acreditará, el número de días, por vacaciones y por enfermedad acumulados por dicho funcionario o empleado, según el sistema de licencia en vigor en cada Servicio." 3 L.P.R.A. sec. 697.

Por otra parte, el Artículo 3 dispone que:

"El máximo de licencia transferible será de 60 días en el caso de licencia por vacaciones y de 90 días en el caso de licencia por enfermedas." 3 L.P.R.A. sec. 698.

Por mandato específico de Ley, al darse la transferencia de los balances de licencias acumulados por un empleado efectuada en base a una transacción de personal debidamente autorizada, dicha transferencia se da solo hasta un máximo de sesenta días por concepto de vacaciones, y en relación con la licencia por enfermedad, hasta un máximo de noventa días.[24] Al pasar de un puesto a otro dentro del servicio público, el empleado o funcionario tiene el derecho y seguridad de que los balances acumulados en su puesto de origen, se transfieran intactos a la agencia o instrumentalidad a la cual va a rendir sus servicios profesionales.

Es por tal razón que este foro se vio en la necesidad de resolver, y resolvió, en Autoridad de los Puertos, ante, que "puesto que la Ley Núm. 12, supra, dispone la cantidad máxima de licencia transferible, nada impide que en aquellos casos en que un empleado pasa a ocupar otra posición en otra agencia o rama de gobierno comprendida en el servicio público, y que ha acumulado más de sesenta (60) días en el caso de licencia por vacaciones y/o de noventa (90) días de licencia por enfermedad, le pueda pagar la agencia o rama de gobierno en que el empleado cesa de laborar el exceso en efectivo cuando así los disponga la reglamentación correspondiente de dicha agencia o rama de gobierno."[25] (Subrayado nuestro.)

De manera que, una agencia o instrumentalidad de gobierno puede satisfacer el pago del exceso por días acumulados en licencias de vacaciones y enfermedad, a un empleado suyo que pasa a ocupar otra plaza dentro del servicio público, si es que así su reglamentación de personal lo dispone. Cumpliendo con la obligación de ley impuesta por el estatuto antes mencionado, al pasar el Sr. Matos de la ACT a AFASS inicialmente, la segunda tenía que acreditarle los balances acumulados por éste en la ACT. Es decir, era su deber acreditar

---

[24] Véase, además, Autoridad de los Puertos v. Municipio de San Juan, ante; Opinión del Secretario de Justicia Núm. 29 de 1 de diciembre de 1992; Opinión del Secretario de Justicia Núm. 1 de 13 de enero de 1993; Opinión del Secretario de Justicia Núm. 22 de 14 de octubre de 1993.

[25] Autoridad de los Puertos, ante, pág.510. Es norma de derecho administrativo que la reglamentación de personal de una corporación pública constituye la fuente de todos los derechos de sus funcionarios y empleados en cuanto a todo lo relativo a la acumulación, concesión, disfrute y apago global de las licencias de vacaciones y por enfermedad. Opinión Secretario de Justicia Núm. 1 de 13 de enero de 1993.

el balance de cuarenta y seis días y medio (46.5) de licencia de vacaciones y noventa (90) días por enfermedad. Hay que enfatizar el hecho de que en el presente caso, al darse el traslado original, en ninguna de las dos licencias se había acumulado en exceso del máximo reglamentario ni en exceso del máximo transferible estatuido en la Ley Núm. 12.

En consecuencia, nos vemos en la obligación de resolver que el Sr. Matos Nazario acumuló el exceso en ambas licencias mientras rendía servicios profesionales en la AFASS. Al éste acumular cuarenta y dos (42) días de vacaciones y treinta y seis días y medio (36.5) por enfermedad en AFASS, esto añadido a los balances que se debieron haber acreditado de la ACT, se configuró un exceso de veintiocho días y medio (28.5) de vacaciones y de treinta y seis días y medio (36.5) de enfermedad. Al demandante regresar o reintegrarse a sus servicios en la ACT, sólo se pudo haber transferido hasta el máximo dispuesto por ley. A dicha fecha había acumulado días de licencia por vacaciones y enfermedad en exceso de lo establecido en el reglamento de AFASS. Le correspondía, por tanto, a AFASS --al momento de la segunda transferencia-- satisfacerle en efectivo al demandante el exceso acumulado en ambas vacaciones, si es que el Reglamento de Personal de AFASS provee para el pago de dichos excesos.

En virtud de su ley habilitadora, la AFASS es un "administrador individual" en asuntos de personal.[26] Dicha agencia aprobó su propio Reglamento de Personal el 7 de junio de 1978. El mismo dispone que los empleados podrán acumular licencia de vacaciones hasta un máximo de sesenta (60) días laborables y hasta un máximo de noventa (90) días por enfermedad. No obstante, dicho reglamento no provee   --como tampoco prohibe-- para el pago en efectivo del exceso por días acumulados en licencias de vacaciones y enfermedad.

Resolvemos que, no obstante las circunstancias particulares de la agencia --AFASS-- que recibió los servicios del empleado, la cual no tenía reglamentación en cuanto al pago del exceso por concepto de licencias acumuladas, le corresponde a dicha agencia satisfacer el pago en efectivo por el exceso de dichas licencias de vacaciones y enfermedad acumulado mientras éste rindió servicios bajo su supervisión; ello por dos razones: en primer lugar, el reglamento de AFASS no lo prohibe; en segundo término, de esta manera evitamos una situación de enriquecimiento injusto de parte de dicha agencia y en perjuicio del empleado, que no podría recibir dicha compensación de otra manera. Esto por razón de que fue precisamente en dicha agencia que el demandante acumuló dicho exceso. El mismo surgió a raíz de la prestación de servicios en virtud del licencia sin paga que le fue concedida por la ACT.

La doctrina de enriquecimiento injusto está predicada en la equidad. Al igual que otras acciones basadas en los principios de equidad, la reclamación por enriquecimiento injusto sólo procederá cuando no exista ley que provea para otra causa de acción. Ortiz Andújar v. E.L.A., 122 D.P.R. 817 (1988). Los siguientes elementos tienen que concurrir para que se de una debida aplicación de dicha doctrina, a saber; existencia de un enriquecimiento, un correlativo empobrecimiento; conexión entre dicho enriquecimiento y el empobrecimiento; falta de causa de acción que justifique el enriquecimiento; inexistencia de precepto legal que excluya la aplicación del enriquecimiento sin causa. Ortiz Andújar v. E.L.A, ante; Morales v. Municipio de Toa Baja, 119 D.P.R. 682 (1987).

Es norma de derecho reconocida que esta doctrina es de aplicación, en determinadas ocasiones, a organismos administrativos. Véase: Plan de Bienestar de Salud v. Alcalde de Cabo Rojo, 114 D.P.R. 697 (1983). En Hatton v. Municipio de Ponce, 134 D.P.R. 1001 (1994), expresamos, al definir los contornos de esta doctrina, que la misma "no se aplicará cuando resulte contraria a una clara política pública, plasmada en un estatuto o en la Constitución". (Enfasis suplido.)

Precisamente por ello es que la doctrina de enriquecimiento injusto es de aplicación en el presente caso. Constituye una clara política pública[27], que debe ser fomentada, la

---

[26] Ley Núm. 26 de 13 de noviembre de 1975, 24 L.P.R.A. sec. 337d.

[27] El 20 de agosto de 1996, se aprobó la Ley Núm. 156, a los efectos de conceder a las agencias gubernamentales la facultad de pagar anualmente a los empleados las licencias de vacaciones y de enfermedad acumuladas y no disfrutadas en exceso de lo establecido por reglamentación. Mediante tal estatuto, se propuso un cambio en las facultades de las agencias, para que éstas tuvieran la opción de conceder a sus empleados el derecho al pago anual de licencias acumuladas y no disfrutadas por concepto de vacaciones y enfermerdad en exceso a lo reglamentado. Exposición de Motivos, Leyes de Puerto Rico, 1996.

Hasta tal momento, debido a la limitación del pago de una suma global por concepto de licencias acumuladas sólo a la separación del servicio, la mayoría de las agencias sólo concedían a sus empleados el beneficio de disfrutar del exceso de licencia acumulada sobre el límite de 60 días, cuando no hubieran podido disfrutar de dicha licencia por necesidades del servicio. El no probar esto último implicaba la pérdida del exceso de licencia acumulada y no disfrutada. Esta medida tuvo pues el propósito de evitar dicha situación y premiar al empleado público que utiliza sus licencias de manera razonable, dándole pues el beneficio de concederle el mecanismo del pago en efectivo del exceso acumulado en licencias y no disfrutado.

La aprobación de dicho estatuto nos ilustra sobre la intención del legislador de no permitir que empleados públicos que hubieran acumulado exceso de licencias, se vieran impedidos de obtener una cantidad de dinero por concepto de dicho exceso, máxime cuando la reglamentación de las respectivas agencias no disponían sobre el modo de satisfacer dicho pago. De manera que no resulta difícil llegar a la razonable conclusión sobre disponer tal pago, aun cuando este estatuto no hubiera estado vigente al momento en que el demandante pasó de la AFASS a reintegrarse a sus labores en la ACT.

Hay que tener en mente que "toda acción legislativa persigue un propósito. Trata de corregir un mal, alterar una situación existente, complementar una reglamentación vigente, fomentar algún bien específico o el bienestar general, reconocer o proteger un derecho...". R.E. Bernier

de garantizar la movilidad de los empleados públicos entre las distintas agencias y dependencias del Gobierno de Puerto Rico y de que éstos no sean penalizados por ello en forma alguna, esto es, y en lo pertinente, dichos empleados tienen el derecho a disfrutar del exceso de vacaciones que acumulan y/o que se le satisfaga en efectivo dicho exceso. Cuando no se permite el disfrute de la licencia de vacaciones acumuladas y luego tampoco se permite el pago de dicha licencia, ello claramente constituye una situación de enriquecimiento injusto por parte del organismo gubernamental concernido.[28]

El Sr. Matos Nazario rindió servicios y laboró durante dos años consecutivos para la AFASS; dicha agencia se benefició de su trabajo. Al culminar sus labores en dicha agencia, y reintegrarse a sus labores en la ACT, careció, de oportunidad de disfrutar dicho exceso acumulado en licencias, por lo que, procede indemnizarlo de la única forma posible, el pago en efectivo de dicho exceso. No puede negársele el mismo bajo el fundamento de que el reglamento de la AFASS no provee para dicho pago. Es evidente y nunca se cuestionó el hecho de que el Sr. Matos Nazario acumuló dicho exceso y que no lo pudo disfrutar en momento alguno.

El hecho de que el Sr. Matos Nazario no hubiera tenido oportunidad de disfrutar de sus licencias acumuladas de enfermedad y de vacaciones, no debe perjudicar a éste toda vez que no debemos penalizarle por la falta de diligencia de AFASS. Rodríguez Cruz v. Padilla, ante. De concluir que no procede el pago, AFASS estaría beneficiándose del trabajo realizado por el demandante aun cuando fue evidente que el exceso acumulado se configuró mientras éste rindió servicios para dicha agencia. Repetimos, no puede negársele el referido pago bajo el fundamento de que el reglamento de la AFASS no provee para el mismo. La alternativa de dejar desprovisto de ello al empleado no es aceptable.

La conclusión a la que hoy llegamos refleja fielmente la intención del legislador referente a las disposiciones sobre transferencias de balances de licencias de vacaciones y enfermedad acumulados por empleados y funcionario públicos, independientemente de cual sea la transacción de personal comprendida; todo ello en aras de fomentar una administración de personal eficiente que inspire a los servidores públicos a fomentar una carrera profesional dentro del gobierno central sin obstáculos que impidan su movilidad dentro del sistema.

Por otro lado, no podemos dejar desprovisto de indemnización, por concepto de licencias de vacaciones y enfermedad acumuladas y no disfrutadas, a un servidor público

---

y J. A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, San Juan, Publicaciones JTS, 1987, págs. 245-246.

[28] Véase Opinión del Secretario de Justicia Núm. 29 de 1 de diciembre de 1992, interpretando a Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486 (1990).

que aportó todo su conocimiento y experiencia a dos dependencias gubernamentales que evidentemente se beneficiaron de tales servicios.[29]

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[29] El Reglamento de AFASS, en su Sección 11.4(1), apartado (g) solamente dispone para que el empleado que ha acumulado en exceso de licencia sobre el límite de sesenta (60) días, disfrute de dicho exceso en la fecha más próxima posible, dentro del término de los primeros seis (6) meses del siguiente año natural.

Esta disposición reglamentaria no tiene ningún efecto en cuanto a la situación del Sr. Matos Nazario, pues al éste pasar ininterrumpidamente de la AFASS a la ACT, al concluir la licencia sin sueldo, perdió toda oportunidad para disfrutar dicho exceso. Brindarle esa oportunidad en estos momentos no tendría ninguna razón de ser.

Además, no podemos ordenarle a la ACT que conceda en estos momentos el disfrute del exceso, pues fue precisamente en la AFASS donde el empleado lo acumuló y fue en esa agencia donde no pudo disfrutarlo. No podemos tampoco exigir a la ACT que conceda dicho exceso, pues estaríamos penalizándola por falta de diligencia de la AFASS al no procurar que el demandante disfrutara de sus vacaciones en la forma más compatible con el plan de vacaciones y enfermedad en vigor en dicha agencia.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Narciso E. Matos Nazario

    Demandante-recurrido

       vs.                      CC-2000-509         CERTIORARI

Autoridad de Carreteras y
Transportación; Administración
de Facilidades y Servicios de
Salud

    Demandados-peticionario
    el último


SENTENCIA

San Juan, Puerto Rico, a 23 de abril de 2001

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Presidente señor Andréu García y el Juez Asociado señor Fuster Berlingeri concurren en el resultado sin opinión escrita. El Juez Asociado señor Corrada del Río inhibido.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo