# 2008 DTA 77

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL I**

JOSÉ R. ROBLES MIRANDA
Recurrente

v.

ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO DE LOS
EMPLEADOS DEL GOBIERNO Y LA JUDICATURA
Recurrido

. Núm. KLRA-2007-00523

San Juan, Puerto Rico, a 29 de mayo de 2008

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
y los Jueces Ramírez Nazario y Piñero González

Ramírez Nazario, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Comparece el señor José R. Robles Miranda (señor Robles) para solicitar la revocación de la Resolución emitida el 28 de marzo de 2007 y notificada el 11 de mayo de igual año por la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Retiro). Mediante la referida Resolución, Retiro le denegó los beneficios por incapacidad ocupacional.

Considerados los escritos de las partes, así como los documentos que los acompañan a la luz del derecho aplicable, resolvemos confirmar la Resolución recurrida.

### I

El señor Robles tiene aproximadamente 63 años de edad y escolaridad de tercer grado de nivel elemental. Surge de los autos que cotizó 3 años en Retiro, durante los que laboró para la Administración de Servicios y Desarrollo Agropecuario como trabajador agrícola.

Se desprende del expediente que en 1993 sufrió un accidente mientras descargaba un camión con cal. Como consecuencia, la Corporación del Fondo del Seguro del Estado (Fondo) le relacionó un esguince de la rodilla derecha. Posteriormente, en 1995 sufrió un segundo accidente al levantar 100 libras y lastimarse la cintura y las rodillas. El Fondo le relacionó esta vez los diagnósticos de Medial Menisectomy Left Knee and lateral menosectomy left knee, esguince lumbar, spondilolysis and grade I Spondylolisthesis L5-S1, HNP L2´L3, left knee artoscopy, esguince rodilla izquierda y capsulitis and calcific tendinitis at left knee.

Así, el 5 de septiembre de 1996, el señor Robles presentó ante Retiro su solicitud de pensión por incapacidad ocupacional. El 14 de enero de 1997, Retiro denegó su petición. Inconforme, el señor Robles solicitó la reconsideración de la determinación. Luego solicitó el archivo sin perjuicio del caso, toda vez que tenía pendiente otro caso de relación causal de condición emocional ante la Comisión Industrial; de forma, que el caso fue archivado sin perjuicio.

En el 2003, el señor Robles solicitó que se dejara sin efecto el archivo de su caso, petición denegada por Retiro. El señor Robles apeló la determinación de Retiro ante la Junta de Síndicos, que revocó y ordenó la reapertura del caso para que fuera reevaluado por Retiro. Así las cosas, Retiro emitió Resolución el 23 de agosto de 2005 en la que se reafirmó en la no concesión de los beneficios por incapacidad ocupacional. Insatisfecho, el señor Robles presentó apelación ante la Junta de Síndicos.

Tras varios trámites procesales, la vista administrativa tuvo lugar el 16 de noviembre de 2006. Luego de evaluar la prueba sometida, la Junta de Síndicos confirmó la decisión de Retiro. Determinó que el señor Robles no se encontraba incapacitado para ejercer funciones de su empleo, y que las condiciones no relacionadas no podían considerarse por éste no contar con más de diez años cotizados en Retiro para concederle una pensión por incapacidad no ocupacional.

### II

Inconforme, el señor Robles acude ante nos y señala como errores:

*"Erró la Honorable Junta de Síndicos del Sistema de Retiro en la interpretación que hace de la ley y el reglamento, ya que es irrazonable y produce resultados inconsistentes con, o contrarios, al propósito de la ley y lleva a la comisión de una injusticia.*

*Erró la Honorable Junta de Síndicos en no discutir por que (sic) razón el apelante no cumple con los listings de Seguro Social que son los mismos criterios médicos que debe utilizar la Honorable Junta de Síndicos.*

*Erró la Honorable Junta de Síndicos en no tomar en consideración, que las condiciones orgánicas que el (sic) padece le producen serias limitaciones de movimientos y un dolor bien severo que obviamente es incapacitante.*

*Erró la Honorable Junta de Síndicos en darle más peso a los resúmenes de expedientes de los asesores médicos de la Administración que nunca han visto a la parte recurrente, en vez de darle más peso a los médicos de cabecera de la parte recurrente que le ofrecen tratamiento y conocían bien sus condiciones y establecen que el (sic) esta (sic) incapacitado total y permanentemente.*

*Erró la Honorable Junta de Síndicos en la definición de lo que es una persona incapacitada total y permanentemente, según la Ley Número 447 del 15 de mayo de 1951.*

*Erró la Honorable Junta de Síndicos en concluir que la parte recurrente no cumple con el listado 1.03 y 1.05 de los listings del Seguro Social y en no tomar en consideración si la combinación de condiciones de el (sic) apelante la (sic) incapacitan totalmente.*

*Erró la Honorable Junta de Síndicos al no evaluar la capacidad funcional del peticionario (sic) para hacer otro trabajo remunerativo, a la luz de su edad, preparación académica y experiencia de trabajo."*

### III

La facultad de revisión de los tribunales bajo la Ley de Procedimiento Administrativo Uniforme, es limitada. Según ha establecido el Tribunal Supremo de Puerto Rico, las decisiones de los organismos administrativos especializados gozan de deferencia por los tribunales y se presumen correctas. La revisión judicial de las mismas se circunscribe a determinar si la agencia en el caso particular actuó arbitraria, ilegalmente, o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Municipio de San Juan v. Junta de Calidad Ambiental*, 149 D.P.R. 263 (1999); *Franco v. Departamento de Educación*, 148 D.P.R. 703 (1999); *Misión Industrial v. Junta de Planificación*, 146 D.P.R. 64 (1998); *Henríquez v. Consejo de Educación Superior*, 120 D.P.R. 194 (1987); *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975).

Por el contrario, si las interpretaciones de la agencia especializada son razonables y consistentes con el propósito legislativo que inspiran los estatutos directivos, el tribunal debe abstenerse de intervenir con las mismas. *Costa v. Caguas Expressway Motors, Inc.*, 149 D.P.R. 881 (2000); *Misión Industrial v. Junta, supra*; *Comisionado de Seguros v. Antilles Ins. Co.*, 145 D.P.R. 226 (1998); *Rivera Rentas v. A & C Development Corp.*, 144 D.P.R. 450 (1997).

La intervención judicial con las actuaciones administrativas, de este modo, ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado, (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba, y (3) si las conclusiones de derecho del organismo administrativo son correctas. 3 L.P.R.A. sec. 2175; *P.R.T.C. v. Junta Reglamentadora*, 151 D.P.R. ___ (2000), **2000 J.T.S. 98**; *Rivera Rentas v. A & C Development Corp., supra*.

La norma reiterada en cuanto a las determinaciones de hechos formuladas por una agencia administrativa es que los tribunales no deben intervenir con las mismas si están sostenidas por **evidencia sustancial** que surja del expediente administrativo considerado en su totalidad. *Asociación de Vecinos v. United Medical Corporation*, 150 D.P.R. 70 (2000); *Domínguez v. Caguas Expressway Motors, Inc.*, 148 D.P.R. 387 (1999); *T-JAC, Inc. v.*

*Caguas Centrum Limited,* 148 D.P.R. 70 (1999); *Assoc. Ins. Agencies, Inc. v. Comisionado de Seguros,* 144 D.P.R. 425 (1997).

La evidencia sustancial para sostener la actuación administrativa es aquélla que una mente razonable puede aceptar como adecuada para sostener una conclusión. La intervención del Tribunal está limitada a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. Si existe más de una interpretación razonable de los hechos, los tribunales sostendrán la decisión de la agencia y no sustituirán su criterio por el de ésta. Al revisar las determinaciones de hechos, la evidencia debe ser considerada en su totalidad. *Asociación de Vecinos v. United Medical Corporation, supra; Hilton Hotels International, Inc. v. Junta de Salario Mínimo,* 74 D.P.R. 670 (1953).

En lo pertinente al caso de autos, debemos reseñar que la Ley del Sistema de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico, Ley Núm. 447 del 15 de mayo de 1951, según enmendada, 3 L.P.R.A. § 761 *et seq.,* es una ley general que provee beneficios de retiro a los empleados del gobierno estatal y que contiene varias modalidades de pensiones o anualidades por retiro. *Pérez v. Departamento de la Familia,* 156 D.P.R. __ (2002), **2002 J.T.S. 28**; *Calderón v. Adm. Sistemas de Retiro,* 129 D.P.R. 1020 (1992); *Caballero v. Sistema de Retiro,* 129 D.P.R. 146 (1991).

El Artículo 9 de la Ley Número 447, 3 L.P.R.A. sec. 769, dispone lo relativo a la anualidad por incapacidad ocupacional:

*"Todo participante que, como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que:*

*a. Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios que mediante reglamento fije el Administrador.*

*b. El participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad.*

*c. El Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo.*

*d. El participante tendrá que radicar la solicitud, sustentada con suficiente prueba médica, dentro de los ciento ochenta (180) días en que se relacione la condición por la cual radica su solicitud."*

Por su parte el Artículo 10 de la referida ley, 3 L.P.R.A. sec. 770, en lo pertinente, dispone con relación incapacidad no ocupacional, que:

*"Todo participante que, teniendo por lo menos 10 años de servicios acreditados, se inhabilitare para el servicio, debido a un estado mental o físico y que por razón de ese estado estuviere incapacitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado, tendrá derecho a una anualidad por incapacidad no ocupacional. El retiro del participante tendrá lugar a petición o solicitud suya o a petición del jefe de su departamento u oficina, mientras esté en servicio el mencionado participante, y de acuerdo con las reglas sobre anualidades por incapacidad provistas en la sec. 771 de este título."*

El Artículo 11 de la Ley 447, 3 L.P.R.A. sec. 771, lee, en lo pertinente, como sigue:

*"Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, se considerará*

*incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica conforme a los criterios que mediante reglamento fije el Administrador y dicha prueba revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado. El Administrador, según lo crea conveniente y necesario, podrá requerir al participante que se someta a exámenes adicionales con médicos seleccionados por el Administrador. Cuando la prueba médica revele que el participante está total y permanentemente incapacitado para cumplir los deberes de cualquier cargo, no será necesario el examen periódico."*

Para interpretar e implementar las normas antes citadas, el Sistema de Retiro aprobó el Reglamento General para la Concesión de Pensiones, Beneficios y Derechos, Reglamento Núm. 4930 de 25 de junio de 1993 (el Reglamento 4930). [1] La Regla 24 atiende lo relativo a la anualidad por incapacidad ocupacional y al respecto establece en su acápite 4 que:

*"[S]i de la evidencia médica que consta en el expediente y conforme al listado de criterios médicos ("Adult Listings") establecidos para determinar incapacidad y del análisis e investigación que realicen los técnicos en determinación de incapacidad designados por el Administrador, no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes médicos adicionales que se entiendan necesarios para adjudicar en sus méritos la petición de beneficios por incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre la incapacidad y someterá su recomendación al Administrador. Se considerará capacitado al participante, si no está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que esté percibiendo."* [Énfasis nuestro].

Por su parte, la Regla 25.4 del Reglamento Núm. 4930, *supra*, que rige lo atinente a la pensión por incapacidad no ocupacional provee un lenguaje equivalente al arriba citado, para establecer los criterios que gobernarán la evaluación médica sobre las condiciones incapacitantes que aquejan al participante. La Regla 25.3 del Reglamento 4930 provee que para tener derecho a una pensión por incapacidad no ocupacional, el participante deberá: (1) tener por lo menos diez (10) años de servicios acreditables; (2) estar en servicio activo a la fecha de radicación de la solicitud; (3) padecer de una incapacidad física o mental que no puede haber sido provocada por hábitos viciosos, intemperancia o mala conducta; y (4) presentar suficiente prueba que demuestre que está incapacitado total y permanentemente para cumplir con los deberes de cualquier cargo que en el servicio del patrono se le hubiese asignado o para trabajar en cualquier clase de empleo retribuido, con una retribución igual o similar a la que recibía.

En cuanto al criterio de incapacidad, en Sánchez v. Adm. Sistemas de Retiro, 116 D.P.R. 372 (1985), el Tribunal Supremo de Puerto Rico expresó que *"[l]a incapacidad que obligue al retiro del empleado con derecho a la anualidad por incapacidad ocupacional debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo"*. De tal forma, sobre el solicitante de la anualidad recae el *onus probandi* a los fines de establecer, con suficiente prueba médica: (1) que su incapacidad es total y permanente, y (2) que tal incapacidad lo inhabilita para continuar en el mismo u otro empleo remunerado. *Vargas v. Adm. Sist. Ret. Emp. E.L.A.,* 159 D.P.R.___(2003); **2003 J.T.S. 56**. Se trata, pues, de un análisis especializado que lleva a cabo el Administrador, fundamentado en el análisis profesional y la evaluación detallada que hacen sus asesores. Todo ello dirigido a determinar si de acuerdo a determinados criterios, el solicitante está incapacitado total y permanentemente para cumplir con los deberes de cualquier cargo que se le hubiese asignado en el servicio del patrono o para trabajar en cualquier clase de empleo retribuido. *Sánchez v. Adm. Sistemas de Retiro, supra.*

Finalmente, es importante señalar que aun cuando el Reglamento Núm. 4930 hace referencia a los criterios

de incapacidad de los reglamentos federales, el esquema para la concesión de remedios en la jurisdicción federal es esencialmente distinto al que opera para la concesión de los beneficios del gobierno estatal. Tal y como puede apreciarse del lenguaje contenido en las disposiciones de la legislación local, contrario a lo que dispone la Ley Federal del Seguro Social, 42 U.S.C.A. § 423(d), nuestro ordenamiento no provee para que en la evaluación que le compete hacer a la Administración de Retiro, a los fines de determinar si un empleado está incapacitado, sean considerados los factores socioeconómicos que sí contempla la legislación aplicable a la Administración del Seguro Social. Por el contrario, la determinación de incapacidad al amparo de la Ley Núm. 447, debe limitarse exclusivamente a evaluar si el solicitante está impedido de realizar las funciones de su empleo o de cualquier otro trabajo remunerativo. *Sánchez v. Administración de los Sistemas de Retiro, supra.*

## IV

Discutiremos en conjunto los errores señalados. Es la contención del señor Robles que presentó abundante evidencia de sus médicos de cabecera que establece que está total y permanentemente incapacitado. Alega que esta prueba que obra en el récord no fue considerada, y que menoscaba el valor probatorio de la evidencia utilizada por la Junta de Síndicos para fundamentar su determinación. Ello, pues aduce que la Junta de Síndicos evaluó la evidencia médica de forma selectiva en detrimento de éste y que no consideró las determinaciones de incapacidad de los médicos que lo han tratado.

Respecto a esta alegación, debemos puntualizar que la ley y el reglamento de Retiro establecen que *"el Administrador, según lo crea conveniente y necesario, podrá requerir al participante que se someta a exámenes adicionales con médicos seleccionados por el Administrador."* Del Reglamento surge lo siguiente: *"...si no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes médicos adicionales que se entiendan necesarios para adjudicar en sus méritos la petición de beneficios por incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre la incapacidad y someterá su recomendación al Administrador."*

Estas disposiciones de ley establecen claramente que Retiro tiene la facultad de someter a los solicitantes a otras evaluaciones médicas por doctores escogidos por la agencia para poder determinar con certeza si son elegibles para una pensión por incapacidad. La contención del señor Robles respecto a que la Junta de Síndicos no consideró cierta prueba, es una que podrá esgrimirse, siempre que la determinación final de Retiro o la Junta de Síndicos sea la de denegar una solicitud de incapacidad. No obstante, ello no implica que tanto Retiro como la Junta de Síndicos dejaron de considerar la totalidad de la prueba en autos. Lo que se desprende del expediente es que tanto Retiro como la Junta de Síndicos evaluaron la totalidad de la prueba previo a tomar su decisión.

De la resolución recurrida surge detalladamente toda la prueba, particularmente la evidencia médica, tomada en consideración por la Junta de Síndicos y Retiro. La resolución esboza la evidencia médica que fue examinada, la cual incluye todas las condiciones que padece el señor Robles. Entre la evidencia analizada se encuentran, entre otros: 1) copia del expediente médico ante el Fondo; 2) evaluación neurológica de la Dra. Rodríguez Aja, 1996; 3) informe radiográfico de 2001; 4) informe radiográfico de lumbar spine de 2001; 5) densitometría osea de 2001; 6) expediente médico del Dr. Rodríguez; 7) informe radiográfico de rodillas de 2003; 8) reporte músculo esqueletal de 2005 y 2006; 9) evaluación ortopédica del Dr. Cintrón, 1996; 10) revisiones médicas de asesores de Retiro; 11) informe del Dr. Sastre, 1996, 12) evaluación Dr. Matos, reumatólogo, 2005.

De lo anteriormente detallado se puede observar que la Junta de Síndicos no sólo tomó en consideración las evaluaciones hechas por los médicos asesores de Retiro. Fueron consideradas, además, otras evaluaciones y estudios efectuados por médicos que trataron al señor Robles, así como las evaluaciones médicas del Fondo. La Junta de Síndicos examinó toda la abundante prueba médica que tuvo ante sí, y en sus conclusiones de derecho

enfatizó aquella que a su juicio mereció destacarse para concluir que el señor Robles no está totalmente incapacitado. Ello no implica que la evaluara selectivamente o que dejara de considerar los informes mencionados por el señor Robles.

Como hemos expresado, la Junta de Síndicos al emitir su decisión, tomó en consideración toda la evidencia disponible, los criterios médicos aplicables, así como el testimonio del señor Robles. Así, consideró que las condiciones orgánicas del señor Robles relacionadas por el Fondo, aisladas o combinadas, no lo incapacitan total y permanentemente. Sostuvo en apoyo de su conclusión que el señor Robles fue intervenido quirúrgicamente en ambas rodillas con resultados excelentes, por lo que no han sido necesarias intervenciones en los 12 meses posteriores. De esa forma no cumple con el listado 1.05 c. De este modo determinó la Junta de Síndicos, que la prueba médica no estableció que el señor Robles estuviera incapacitado para todo tipo de trabajo. De manera, que correctamente determinó que éstas tampoco cumplen con el grado de severidad requerido por los listados aplicables.

Al evaluar los autos, tenemos que ser deferentes a las conclusiones de Retiro de que las condiciones del señor Robles no alcanzan el grado de severidad requerido, para una incapacidad ocupacional. Tras analizar los listados aplicables a la luz de los exámenes e informes médicos, la Junta de Síndicos resolvió que el señor Robles tenía ciertas condiciones orgánicas no relacionadas. No obstante, estaba impedida de tomarlas en consideración para determinar la incapacidad del señor Robles, pues éste no tenía más de 10 años cotizados en Retiro que lo hicieran acreedor a una pensión por incapacidad no ocupacional.

Es obligación del señor Robles presentar suficiente prueba médica para que de conformidad a los criterios que mediante Reglamento fije el Administrador, se le considere incapacitado. Esta prueba debe revelar, además, que está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiese asignado. El señor Robles no cumplió con esta obligación.

Analizada la totalidad del expediente, ciertamente podemos concluir que el señor Robles padece de ciertas condiciones orgánicas. Sin embargo, según determinado tanto por Retiro como por la Junta de Síndicos, las mismas no son de tal magnitud que le inhabiliten para desempeñarse en cualquier trabajo remunerado. El señor Robles no logró establecer que las condiciones que sufre son de tal severidad como para hacerlo merecedor de una pensión por incapacidad. Reiteramos que tanto la ley como el reglamento de Retiro establecen que se concederá la incapacidad solicitada, siempre que se *recibiere prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios que mediante reglamento fije el Administrador.*

Cuando examinamos la resolución recurrida, se desprende de ella que para sustentar su determinación, la Junta de Síndicos consideró prueba de los diferentes facultativos que evaluaron al señor Robles, los exámenes realizados, así como las evaluaciones realizadas por el Fondo. Luego de tomar en consideración la totalidad del expediente, concluyó que la condición del señor Robles no es lo suficientemente severa para cumplir con los requisitos del listado para una pensión por incapacidad ocupacional.

Luego de una evaluación detenida del expediente ante nos, tenemos que concluir que la decisión de denegar los beneficios por incapacidad ocupacional está apoyada por evidencia sustancial que obra en el expediente administrativo. Distinto a lo alegado, el señor Robles no ha cumplido con su deber de convencernos de que esa otra prueba señalada que obra en el expediente menoscaba la evidencia sustancial en la que se basó la agencia para tomar su determinación. Las determinaciones de hechos de la Junta de Síndicos sostienen sus conclusiones de derecho. Ambas están apoyadas en abundante prueba médica. El señor Robles no ha demostrado que la decisión tomada no sea razonable, ni que la Junta de Síndicos actuara en forma arbitraria, caprichosa o en clara violación de sus derechos fundamentales. Ausente tal demostración, venimos obligados a sostener la decisión del organismo administrativo.

En fin, la determinación de si la condición física del señor Robles es tal que debe considerarse incapacitante se deriva de la apreciación de la prueba que haga el juzgador y la evaluación de si los padecimientos de éste son de la gravedad que requiere la ley. Por tratarse aquí de la apreciación de evidencia altamente técnica y la aplicación de disposiciones legales que a diario maneja la Junta de Síndicos, a no ser que su dictamen sea irrazonable, claramente erróneo o totalmente contrario a la evidencia que obra en el expediente, este foro apelativo intermedio debe sostener el dictamen recurrido. El señor Robles no ha demostrado que la determinación administrativa fue irrazonable a la luz de la evidencia disponible. Del examen del expediente del caso, surge que éste simplemente propone una conclusión alterna de la apreciación de la prueba. En consecuencia, no ha derrotado la presunción de regularidad y corrección que cobija a las adjudicaciones administrativas.

Por otro lado, como parte de los fundamentos para sus señalamientos de error, el señor Robles indica que la Junta de Síndicos al interpretar la ley y los criterios médicos está siendo irrazonable y produciendo resultados contrarios a su propósito, y por consiguiente casi nadie está cualificado para que le otorguen la Pensión por Incapacidad. Añade que se está utilizando los mismos criterios que el Seguro Social, pero se está dando la anomalía de que personas que reciben el Seguro Social por las mismas idénticas condiciones de salud no cualifican para recibir la pensión de Retiro. Así, destacó factores como la edad, educación y experiencia de trabajo del señor Robles que entiende se debieron considerar al emitir la determinación sobre su incapacidad.

En este sentido debemos aclarar una vez más que, aun cuando el Reglamento 4930, *supra*, se refiere a los criterios de incapacidad adoptados por las autoridades federales bajo la Ley de Seguridad Social, *supra*, no es menos cierto que dentro del contexto de dicha ley se toman en consideración criterios que no fueron adoptados por Retiro. Por ejemplo, nuestro ordenamiento no provee para que en la determinación de incapacidad se consideren factores socioeconómicos. Por tanto, bajo la Ley de Seguridad Social Federal, supra, pueden concederse beneficios por incapacidad que no están contemplados en nuestra Ley Núm. 447, *supra*. La determinación de incapacidad al amparo de esta última, se limita exclusivamente a evaluar si por razones de salud el solicitante está impedido de realizar las funciones de su empleo o de cualquier otro trabajo. El grado de incapacidad que requiere probarse bajo el Reglamento 4930, *supra*, es una total y permanente.

Retiro es una entidad gubernamental autónoma con fines, aunque similares, distintos a los de la agencia federal. Por tal razón, la determinación que realice una sobre incapacidad no obliga a la otra. Por tanto, respecto a la Administración del Seguro Social y contrario a lo que plantea el señor Robles, la determinación que le compete hacer a Retiro constituye un juicio independiente. A pesar de que la Ley Núm. 447, *supra*, y la Ley Federal del Seguro Social, *supra*, establecen esquemas de compensación similares en algunos aspectos, éstos también se diferencian en asuntos fundamentales, por lo cual Retiro no viene obligada a emular la decisión de la Administración del Seguro Social. Ello no es más que un factor adicional que puede tomar en consideración el foro administrativo al momento de emitir su conclusión. Sobre esto y en atención a que el señor Robles formula que la Junta de Síndicos erró al no considerar factores relacionados a su edad, experiencia de trabajo y preparación académica para concederle la pensión, es menester enfatizar que al aprobar la Ley Núm. 447, *supra*, la Asamblea Legislativa, contrario a la legislación federal, no adoptó como uno de los criterios a considerarse los factores socioeconómicos presentes en cada caso. De la comparación de las dos piezas legislativas, puede apreciarse que a pesar de sus similitudes en algunas áreas, se trata de dos estatutos con distintos propósitos, participantes y factores a evaluarse. Somos del criterio de que si la intención del legislador hubiese sido incorporar dichos criterios a nuestro sistema de retiro, lo habría hecho expresamente de manera similar a la ley federal. Ante la ausencia de lenguaje al respecto en la Ley Núm. 447, *supra*, reiteramos que las determinaciones sobre incapacidad que realice la Administración de Seguro Social Federal son más que un factor adicional que puede tomar en consideración el foro administrativo al momento de pasar juicio sobre la condición médica de un solicitante de pensión por incapacidad.

## V

Por todos los fundamentos antes expuestos se confirma la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

**ESCOLIO 2008 DTA 77**

**1.** El Reglamento para la Concesión de Pensiones por Incapacidad a los Participantes de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura, Reglamento 6719 de 5 de noviembre de 2003, derogó el Reglamento 4930. No obstante, al momento de los hechos del caso de autos, el reglamento vigente era el 4930.